[No. 24586. Department Two. April 6, 1934.]

FRED F. WASHAM, *as Assignee, Appellant,* v.
CHARLES F. WOOD, *Respondent.*[1]

*Jay C. Allen* and *John F. Walthew,* for appellant.

TOLMAN, J.—This action was instituted by the appellant, as plaintiff, to recover on an open account for merchandise sold and delivered in the amount of $276.70. The plaintiff's demand was admitted, but by cross-complaint the defendants sought recovery in an amount largely in excess of the plaintiff's claim. The cause was tried to the court sitting without a jury, resulting in findings and conclusions favorable to the defendant and a judgment thereon against the plaintiff in the sum of $658.30 and costs. The plaintiff has appealed.

The essential facts appear in the findings made by the trial court, which, so far as material to the questions here presented, read:

"That on or about the 19th day of March, 1930, one Richard Sullivan was a tenant on the farm property of defendant in Clallam County, Washington, and on said day was the owner of sixty hogs which were

[1] Reported in 31 P. (2d) 508.

located on said farm property, upon which hogs the Port Angeles Grain & Egg Co., a corporation, had a chattel mortgage of $1,500; that at about the time the said Richard Sullivan was in financial difficulties and was being threatened with bankruptcy, and the said Port Angeles Grain & Egg Co., acting through its general manager, represented to said defendant that it had said chattel mortgage for $1,500, which the said Sullivan could not pay; that the said Sullivan was about to become bankrupt, and that the said Port Angeles Grain & Egg Co. desired to avoid loss on said hogs by reason of their having to be moved, and represented to said defendant that there were eighty of such hogs, and represented to said defendant that he was the only one (being the owner of the land where said hogs were located) who could care for and pay out on said chattel mortgage, and requested said defendant to take a bill of sale of said hogs and give to the said Port Angeles Grain & Egg Co. his promissory note in lieu of the mortgage which it then had from the said Sullivan; that said defendant agreed to said arrangement and gave his promissory note to the said Port Angeles Grain & Egg Co., for $1,500 and thereupon said Port Angeles Grain & Egg Co., satisfied its chattel mortgage on said hogs; that at said time said Port Angeles Grain & Egg Co. agreed with plaintiff to indemnify him and save him harmless if for any reason the said hogs or any thereof should be lost to him; that when said defendant took an inventory of said hogs there were only sixty of such hogs instead of eighty; and that thereafter on or about the 9th day of April, 1930, the said Richard Sullivan was adjudicated a bankrupt, and all of said hogs were claimed by the trustee in bankruptcy as the property of the said Sullivan, and the claim of the defendant thereto was disallowed as being a preference in bankruptcy; that by reason of the fact that there were only sixty hogs instead of eighty as represented to defendant, the defendant sustained damages in the sum of $200 on account of such shortage.

"That thereafter in order to save anything out of the value of said hogs, the said defendant was compelled to pay to the trustee in bankruptcy of the said

Sullivan, the sum of $535 to settle said claim of unlawful preference.

"That on or about the 3rd day of September, 1930, the said plaintiff's assignor purchased from defendant twenty tons of machine run wheat at an agreed price of $34 per ton, and agreed to take said wheat from defendant as the same was threshed.

"That the said plaintiff's assignor had notice of the time of threshing said wheat and failed, neglected and refused to take the same or any part thereof; and thereafter the said defendant, relying upon the promise of plaintiff's assignor to take said wheat, caused the same to be stored, but that said plaintiff's assignor wholly failed, neglected and refused to take said wheat or any part thereof.

"That after said wheat was threshed and placed in warehouse, the market price therefor rapidly declined; that the said defendant held said wheat for approximately six months, at the end of which period of time he had to feed the same to his stock to avoid a total loss on the same.

"That by reason of the failure, neglect and refusal of the said plaintiff's assignor to carry out its contract with the defendant, the defendant suffered a loss on said wheat in the total sum of $200, no part of which has been paid."

The findings as to the hog transaction are well supported by the oral testimony of respondent and of the managing officer of the Port Angeles Grain & Egg Company, and also by some written evidence. It rather clearly appears that the transaction was wholly between the Port Angeles Grain & Egg Company and the respondent at the solicitation of the grain company and for its benefit; that respondent lent himself to the transaction only to aid the grain company to collect its mortgage debt, and did so upon a clear understanding that he would be protected from any loss.

The trial court, who heard and saw the witnesses, believed them; and in the absence of anything in the

nature of a direct denial or any circumstances seriously reflecting upon the testimony given, we see no basis for holding that the facts preponderate against the findings.

While we likewise accept the facts as found by the trial court with reference to the sale of the wheat so far as they go, yet we think the facts found are insufficient to support a recovery on that cause of action.

The contract was to take the wheat from the machine as threshed at $34 per ton. There is sufficient evidence that the grain company was notified and knew when the wheat was threshed. Its failure to then take the wheat was a breach of the contract. According to respondent's own testimony, the market value of the wheat when it was threshed was $34 per ton, the contract price. Therefore, there was no loss occasioned by the breach. Having notified the grain company of the time, and it having failed to live up to its contract to take the wheat from the machine, respondent was free to sell it at once, and could have thus realized the contract price. That he did not choose to take immediate advantage of the breach and resell the wheat, was his own choice, and he cannot hold the grain company for the subsequent fall in the market price.

The judgment must be, and it is modified by a reduction of two hundred dollars in amount, and as so modified, it will stand affirmed.

BEALS, C. J., HOLCOMB, BLAKE, and GERAGHTY, JJ., concur.