Henry A. RUYSSER, Jr., Plaintiff, Respondent,

v.

A. J. SMITH, J. J. Stratton and Charles H. Myers, Defendants,

A. J. Smith, Appellant.

No. 45453.

Supreme Court of Missouri.

Division No. 1.

Oct. 8, 1956.

Robert E. Coleberd, Francis G. Hale, Liberty, for appellant. Arthur R. Kincaid, William B. Waters, Liberty, of counsel.

I. Frank Rope, Rope, Shanberg & Rope, George L. Gordon, Donald W. Johnson, Gordon & Gilmore, Chester B. Kaplan, Bernard J. Ruysser, Kansas City, for respondent.

HYDE, Judge.

Action on an indemnity provision of a contract to recover the amount of a federal income tax deficiency assessment and interest, arising out of plaintiff's 1946 income from a partnership with defendants and others. Plaintiff had judgment for $21,-099.21 against defendants Smith, Stratton and Myers, and only Smith has appealed.

The contract was for the sale of the interest of plaintiff and three other partners to defendants and four other partners. The decisive question is whether the contract provision was an indemnity against liability or an indemnity against loss; or as applied to the facts of this case: Was the actual payment of the additional tax essential to recovery? or did the final determination of plaintiff's liability to pay the tax authorize recovery? Defendant Smith says the tax might be compromised and gives this as one reason why payment should be a condition precedent to this action.

The material part of the contract was as follows:

"3. So long as the Selling Partners are not in default hereunder and have kept and performed their several covenants and agreements herein contained, the Purchasing Partners agree;

"(a) To assume and be liable for all debts and obligations of the Partnership to any firms or persons other than the partners, heretofore incurred or arising out of Partnership transactions heretofore occurring, except any debts, obligations or liabilities of the Partnership which may have been contracted by, or incurred as the result of acts of, the Selling Partners or any of them and which have not heretofore been authorized by the Purchasing Partners or any of them or entered on the books or records of the Partnership.

"(b) To indemnify the Selling Partners and each of them for any sums of money which they or any of them may be required by law to pay upon any obligations of the Partnership herein assumed and agreed to be paid by the Purchasing Partners, and further to indemnify the Selling Partners and each of them for any additional federal or state income taxes which they or any of them respectively upon final determination of such taxes may be hereafter required to and do pay as a result of deficiency assessments based on income arising out of and resulting from the business and operations of the Partnership or any of its subsidiary or affiliate companies, upon the following terms and conditions:

"(1) This indemnity agreement shall not be construed to require any reimbursement of taxes heretofore paid nor shall it apply to any taxes or tax liability based on the distributive share of each of the Selling Partners in the profits of the Partnership in the amounts heretofore reported for each fiscal year of the Partnership in the federal tax information returns of the Partnership heretofore filed, it being the intent of the parties that this indemnity shall apply only to such additional taxes as may be required to be paid as a result of adjustments or deficiency assessments based on or resulting from a final determination of taxable income attributable to the Partnerhip business and operations in amounts over and above the amounts of such taxable income heretofore reported as above stated. * * *

(Sub-paragraph (2) excluded taxes on the last year's income and sub-paragraph (3) gave all refunds or recoveries to the Purchasing Partners.)

"(4) Each of the Selling Partners hereby agrees that the Purchasing Partners or any of them shall have the right, in the name of such Selling Partners, to oppose any such deficiency assessment or claim for additional taxes to which the foregoing indemnity agreement shall apply, and, in the name of such Selling Partner, to interpose any defense available to such Selling Partner, and to prosecute in his name any appeal to any court or authority from any award, finding or judgment for any such taxes, and to assert and carry to final judgment any claim for refund for overpayment of any such taxes, and any recovery upon any such claim for refund shall inure solely to the benefit of the Purchasing Partners. Each of the Selling Partners further agrees to cooperate fully, and to lend all possible aid and assistance to the Purchasing Partners, in the defense against any such assessment or claim and in the prosecution of any such appeal or claim for refund. Any request for such aid and assistance shall be in writing, specifying in detail the acts requested to be performed. The cost of any such defense, appeal or claim for refund shall be borne by the Purchasing Partners."

This contract was made April 13, 1950. At that time, it was known by the parties that deficiency assessments had been made against all of them on their 1946 income tax by reason of disallowance of a loss in a joint venture with Continental Industries, Inc., a wholly owned subsidiary of the partnership, based on advances to it. The partners had received notice of these assessments in June 1949 and on March 8, 1950 they had been notified that their protest against these assessments had not been allowed. It was stated that these deficiency assessments were taken into consideration in fixing the purchase price in the 1950 contract. An appeal to the Tax Court was later decided against them (in 1953) and

the defendant's additional taxes had been paid. The Treasury Department withheld action on plaintiff's additional taxes pending the trial of this case. Less than a year after the contract involved herein, defendants Stratton and Myers sold their interest (February 7, 1951) in the partnership to defendant Smith and others. This contract provided that the purchasers would "protect and hold harmless" the sellers "for any additional federal or state income taxes which they, or either of them respectively, upon final determination of such taxes, may have assessed against them or be otherwise found liable to pay as a result of deficiency assessments based on income arising out of and resulting from the business and operation of the partnership or any of its subsidiary or affiliate companies for 1946." This contract also contained the following provision: "Par. 8. The Purchasing Partners assume and agree to perform the indemnity agreements made by James J. Stratton and Charles H. Myers on the agreement for sale of partnership interest, settlement and release, dated April 13, 1950, and set out in Paragraph No. 3 of such agreement, or any other indemnity agreement heretofore given by Selling Partners, whereby the Selling Partners bound themselves to indemnify the sellers in that contract, viz: Abe Yeddis, Henry A. Ruysser, Jr., William C. McCool and Frank J. Ruysser, or to Ralph S. Wilkins, from liability for additional tax claims and other claims, and the Purchasing Partners in this contract hereby agree to pay on behalf of and to protect and hold harmless the Selling Partners herein, James J. Stratton and Charles H. Myers, from any liability, loss, cost or expense, resulting from or in any way connected with having made such indemnity agreement."

Defendant Smith relies on sub-paragraph 3(b) contending that the contract is one of indemnity for loss, emphasizing the clause "to indemnify the Selling Partners and each of them for any additional federal or state income taxes which they or any of them respectively upon final determination of such taxes may be hereafter required to and do pay as a result of deficiency assessments." However, plaintiff contends that the contract must be considered and construed as a whole, instead of from a single isolated clause, and that so considered it provided for indemnity against liability for additional taxes. We stated the applicable principles in Moberly v. Leonard, 339 Mo. 791, 99 S.W.2d 58, 63, as follows: "There are two kinds of indemnity contracts; indemnity against liability, and indemnity against loss. ' "Where the indemnity is against liability, the cause of action is complete and the indemnitee may recover upon the contract as soon as his liability has become fixed and established, even though he has sustained no actual loss or damage at the time he seeks to recover." 31 C.J. 438, § 33. "Where the contract is not a mere contract to indemnify and save harmless, but a contract to save from a legal liability or claim, the legal liability incurred and not the actual damage sustained is the measure of damage." 31 C.J. 435, § 28.' State-Planters' Bank & Trust Co. v. First National Bank, 4 Cir., 76 F.2d 527, 532, certiorari denied 295 U.S. 764, 55 S.Ct. 923, 79 L.Ed. 1706. 'There is a breach of the covenant and the indemnitee's right of recovery accrues as soon as he has suffered the loss or damage against which he was to be saved harmless'; and 'where the contract is strictly one of indemnity * * against loss or damages, the indemnitee cannot recover until he has * * * suffered an actual loss or damage against which the covenant runs.' 31 C.J. 438, § 32, and 439, § 35. 'A promise to indemnify against the existence of a liability is broken as soon as the liability is incurred, and the promisee is entitled to recover damages based on the amount of his liability although he has not satisfied it. On the other hand, a promisor who has undertaken merely to indemnify against damage is liable only when actual payment has been made by the promisee, or damage suf-

fered by him; and then only to the extent of such payment or damage.' 3 Williston on Contracts, 2501, § 1409."

As said in 5 Williston on Contracts, Rev.Ed. 3923, Sec. 1409: "A distinction, sound in principle, though often difficult to draw in fact, must be taken between a contract on the one hand to assume or pay or indemnify against a debt or liability of the promisee and a promise on the other hand to indemnify only against damage caused by such liability." Sub-paragraph 3(b) standing alone (to indemnify for additional taxes "any of them * * * may be hereafter required to pay and do pay") no doubt would have to be construed as a contract to indemnify against loss only. However, this sub-paragraph concludes by saying the indemnity is "upon the following terms and conditions" which are then stated in the four following sub-paragraphs. The very next sub-paragraph, 3(b) (1) stated the intent to be that the indemnity should apply "to such additional taxes as may be required to be paid * * * resulting from a final determination of taxable income attributable to the partnership business, etc." It also said that it should not apply to any taxes already paid. We think these conflicting provisions, together with the way the whole matter of liability of the partners is covered by Paragraph 3 of the contract, at least makes it ambiguous as to whether indemnity against liability or indemnity against loss was intended and, therefore, must be construed to determine the intent of the parties. As in construing other contracts, "the contract must be read in its entirety and effect given to each part of the agreement, and consideration must be given not only to the language of the contract but also to the situation of the parties and the circumstances surrounding them at the time the contract was made." 42 C.J.S., Indemnity, § 8, p. 574; see also 27 Am.Jur. 462, Sec. 13.

Considering first the surrounding circumstances, it appears that the deficiency assessments, based on income arising out of their 1946 operations, had been made against the partners almost ten months before the contract was made. Likewise, their protest against these assessments had been disallowed more than a month before the date of the contract and they were considered in fixing the purchase price. Thus the amount of this obligation was fixed and known (except as to interest) when the contract was made; and there was nothing more they could do about it except pay these additional taxes or appeal to the Tax Court. Paragraph 3 and particularly sub-paragraph 3(b) (4) must be read in the light of these facts. Considering Paragraph 3 in its entirety, we note that it clearly requires the Purchasing Partners to assume and be liable for all obligations of the partnership. Sub-paragraph (b) provides they will indemnify the Selling Partners for anything they "may be required by law to pay upon any obligations of the partnership." The provision for indemnity as to taxes follows in the same sub-paragraph but was stated to be on terms and conditions subsequently set out; and the intent of this provision, as stated in the next sub-paragraph, (b) (1), is in substantially the same language as the provision concerning the obligations of the partnership namely to indemnify for "such additional taxes as may be required to be paid as a result of adjustments or deficiency assessments based on or resulting from a final determination of taxable income attributable to the Partnership business." Furthermore, less than a year later when defendants Stratton and Myers sold to defendant Smith and others, their contract (paragraph 8 hereinabove set out) described this previous contract as binding them "to indemnify the sellers in that contract (naming them) from liability for additional tax claims and other claims." Thus they recognized that it was their intent that these additional tax claims against the original selling partners should be on the same basis as to indemnity as any claims against them on obligations of the

partnership and that their original contract with them was to indemnify from liability from both classes of claims. Under these facts and circumstances and the language of the contract considered as a whole, we hold that this was the reasonable construction of indemnity provisions and that the result reached by the trial court was correct.

The judgment is affirmed.

All concur.