**BOND DIAMOND COMPANY, a Corporation, and Harry Carstens, Respondents,**

v.

**Harold WILSON and Opal Wilson, Appellants.**

No. 22915.

Kansas City Court of Appeals.

Missouri.

May 4, 1959.

**64**

Hammond C. Woods, Kansas City, for appellants.

Emmett Bartram, M. E. Ford, Maryville, for respondents.

MAUGHMER, Commissioner.

Respondent Bond Diamond Company as plaintiff, sued appellants Harold and Opal Wilson, husband and wife, and Harry and Edwin Carstens on an open account. A jury was waived. Motion for directed verdict as to Edwin Carstens was sustained with no appeal therefrom. On April 15, 1958, plaintiff had judgment against the remaining three defendants in the sum of $3,973.37. On the same date and as part of the same judgment the court entered judgment for like amount in favor of defendant Harry Carstens against his codefendants Harold and Opal Wilson, " * * * this judgment to be considered as satisfied in full by the payment by Harold L. Wilson and Opal E. Wilson of the judgment herein awarded to Bond Diamond Company * * *".

The Wilsons appealed from the judgment entered against them in favor of Bond Company and from the "contingent judgment" entered against them in favor of their codefendant Harry Carstens. Carstens filed no after-trial motion nor did he file brief or appear on the appeal.

Bond Diamond Company is a wholesale jewelry corporation located in New Jersey. Although the evidence is not exact as to dates and trade names, it does show that prior to 1954, the Wilsons and the Carstens were associated together in a business enterprise in Maryville, Missouri. The store was at various times called the "Fix It Shop", "Time and Gift" and "Carstens and Wilson Jewelry and Stationers". Mrs. Wilson was a photo finisher and worked part time. Carstens was a watch repair-man and jeweler. Carstens testified that he was never even part owner, but an employee. Mr. Wilson was treasurer of Nodaway County and on February 1, 1954, having pleaded guilty to a charge of embezzlement of county funds was sentenced to serve a term in the Missouri State Penitentiary. He was confined in Jefferson City from February 1, 1954, to December 10, 1955.

Early in 1954, the operating trade name of the business became "Carstens Jewelry". During 1954 and 1955, while Mr. Wilson was away, Mr. Harry Carstens operated the store. Mrs. Wilson worked there a part of the time. There was evidence that she also prepared and signed as owner certain social security and luxury tax returns. During the two year period plaintiff sold merchandise to Carstens Jewelry. It was established and without real dispute that as of November 28, 1955, there was a balance due on the account of $3,973.37, which was the amount of the ultimate judgment. The allegations in plaintiff's petition upon which it finally went to trial were that during the years 1954 and 1955, the defendants were engaged in the retail jewelry business, were operating the Carstens Jewelry store in Maryville, Missouri, received the merchandise and that the balance was due and unpaid.

We shall consider the contingent judgment of Carstens against the Wilsons separately and later in the opinion. However, in the interest of clarity and full understanding it is essential that a certain written instrument signed by the two Wilsons, which was set out in toto in a pleading filed by defendant Carstens and styled "Cross-claim against Harold and Opal Wilson", be revealed. The text and execution of this document were admitted by the Wilsons in their separate replies and counter-cross-claim pleadings. The Wilsons contended, however, that their signatures were procured through coercion, and that the instrument was without consideration. The evidence on this latter point was conflicting. The trial court found against

these contentions and we see no reason to disturb such findings. We quote material parts from this signed instrument:

"Agreement to Pay Unpaid Bills
and Commission

"Now on this 23rd day of December, 1955 comes the undersigned Harold L. Wilson and Opal E. Wilson, husband and wife and state they are the owners of the Wilson Jewelry Store sometime known as Carsten Jewelry Store or Carsten-Wilson Jewelry Store located on West Fourth Street in the City of Maryville, Nodaway County, Missouri.

"That this writing is a statement that for and in consideration of Harry C. Carsten and Alice J. Carsten have deeded to them certain real estate in the City of Maryville, Nodaway County, Missouri, that the undersigned hereby agrees to pay all back debts, bills and accounts against said jewelry store described above.

"This is to further state that Harry C. Carsten and Eddy Carsten have for all times been employees of the undersigned and that they are in no way responsible for any merchandise purchased since they have been employed by said Harold L. Wilson and Opal E. Wilson, husband and wife.

"Said undersigned further stipulate and agree that they will indemnify and save harmless said Eddy Carsten, Harry C. Carsten and Alice J. Carsten from any debts, claims or demands, past, present or in the future growing out of merchandise sold to said Carsten-Wilson Jewelry Store and further that said undersigned persons hereby agree to pay any and all debts and accounts for merchandise purchased by said store.

\*   \*   \*   \*   \*   \*

"In Witness Whereof, said Harold L. Wilson and Opal E. Wilson have set their hands to this statement this 23rd day of December, 1955 and to three copies thereof.

"/s/   Harold L. Wilson
"/s/   Opal E. Wilson

"Subscribed and sworn to before me this 23rd day of December, 1955.

"/s/   Harold M. Hull
"Notary Public.

"My commission expires May 16, 1956".

There was evidence that early in 1954 and coincident with Harold Wilson's departure for prison and with the appearance on the store window of the trade name "Carstens Jewelry", the Wilsons deeded to Harry C. Carstens and Alice J. Carstens, his wife, a farm and a residence property situated in Nodaway County, Missouri. According to both Mr. Carstens and Mrs. Wilson the purpose of these real estate transfers was to establish Carstens' credit and to enable him in his name and on his credit to buy merchandise and pay bills for the store. Mr. Harold Wilson did not testify. Concurrently with execution of the pleaded written document, the Carstens retransferred such real estate to the Wilsons.

■ This evidence shows a definite and undisputed amount due and judgment accordingly. By their signed statement the Wilsons admitted ownership of the store and declared that Carstens was their employee. The judgment against them was proper. A finding otherwise even in a jury waived case would have to be overturned. In so far as the plaintiff is concerned, Carstens ordered the merchandise and held himself out as a principal. He, too, is liable to the wholesaler. Therefore, plaintiff's judgment as to both the Wilsons and Harry Carstens must be affirmed.

We now consider the validity and propriety of the "contingent judgment" entered in favor of Carstens and against the Wilsons. We have denominated such judgment as "contingent" because by its terms it

became void upon payment by the Wilsons of the main judgment and because execution under it was stayed unless and until payment of the main judgment was made by Carstens.

Section 509.460, V.A.M.S., Cross-claims against coparty, provides: "A pleading may state as a cross-claim any claim by one party against a coparty arising out of the transaction or occurrence that is the subject matter either of the original action or of a counterclaim therein. Such cross-claim may include a claim that the party against whom it is asserted *is or may be liable* to the cross-claimant for all or part of a claim asserted in the action against the cross-claimant". (Italics added).

In Barb v. Farmers Insurance Exchange and Insurance Exchange Building, Inc., Mo., 281 S.W.2d 297, 304, 305, it was held proper under this section for one defendant to cross-claim its claim for indemnity against a codefendant and that the statute was designed to accommodate and facilitate the whole litigation among the parties, including a claim that the party against whom it is asserted "is or may be liable" to cross-claimant. The opinion squarely rules that such cross-claim may be contingent. In support Gabel-Lockhart Co. v. Gabel, 360 Mo. 518, 229 S.W.2d 539; Grue v. Hensley, 357 Mo. 592, 210 S.W.2d 7; State ex rel. Algiere v. Russell, Judge, 359 Mo. 800, 223 S.W.2d 481, are cited.

Clearly, Carstens' cross-claim arose out of the same transaction. By the specific provision of the written instrument dated December 23, 1955, the Wilsons "stipulate and agree that they will indemnify and save harmless (Carstens) from any debts, claims or demands, past, present or in the future growing out of merchandise sold" to the jewelry store. The recited consideration was the retransfer to Wilsons of the real estate.

■ This document is, we think, an indemnity against liability and not merely an indemnity against loss. In 42 C.J.S. Indemnity § 14, page 588, it is stated:

"An indemnitor's liability to the indemnitee accrues when, under the terms and conditions of the particular contract, the covenant of indemnity is broken,

\*     \*     \*     \*     \*     \*

"Where the indemnity is against liability, the cause of action is complete and the indemnitee may recover on the contract as soon as his liability has become fixed and established, even though he has sustained no actual loss or damage at the time he seeks to recover. Thus, under such a contract, a cause of action accrues to the indemnitee on the recovery of a judgment against him, and he may recover from the indemnitor without proof of payment of the judgment."

Judge Hyde for our Supreme Court in Moberly v. Leonard, 339 Mo. 791, 99 S.W.2d 58, as Commissioner, and in Ruysser v. Smith, Mo., 293 S.W.2d 930, as Judge, discussed these matters. In each case he pointed out and emphasized the distinction between an indemnity agreement against liability and one against loss. Each opinion rules that where the indemnity is against liability, the promisee may recover on the amount of his liability although he has not satisfied it. On pages 933 and 934, of 293 S.W.2d of the Ruysser opinion the following from 3 Williston on Contracts, 2501, Par. 1409 is quoted with approval:

" 'A promise to indemnify against the existence of a liability is broken as soon as the liability is incurred, and the promisee is entitled to recover damages based on the amount of his liability although he has not satisfied it. On the other hand, a promisor who has undertaken merely to indemnify against damage is liable only when actual payment has been made by the promisee, or damage suffered by him; and then only to the extent of such payment or damage' ".

The trial court gave Carstens under his cross-claim only a contingent judgment

against the codefendants Wilson—a judgment enforceable through execution only if and when Carstens suffered actual loss through payment of the principal judgment. Carstens has not appealed. We find no valid objections to such judgment in so far as appellants are concerned.

It follows, therefore, that the judgment of the trial court in its entirety ought to be and is affirmed.

SPERRY, C., concurs.

PER CURIAM.

The foregoing opinion by MAUGHMER, C., is adopted as the opinion of the Court.

All concur.