**BURNS & McDONNELL ENGINEERING CO., INC., Appellant,**

v.

**TORSON CONSTRUCTION CO., INC., Respondent.**

**No. WD 44893.**

Missouri Court of Appeals, Western District.

June 2, 1992.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 28, 1992.

Jonathan R. Haden, Kansas City, for appellant.

Daniel E. Hamann, Kansas City, for respondent.

Before BRECKENRIDGE, P.J., and LOWENSTEIN and HANNA, JJ.

HANNA, Judge.

Appellant, Burns & McDonnell Engineering Company, Inc. (Burns), appeals from a grant of summary judgment in favor of respondent, Torson Construction Company, Inc. (Torson). The trial court found that Burns failed to file its claim for indemnity and breach of contract within the limitations period prescribed by § 516.120 RSMo (1986).

Torson was the general contractor for construction of a sewer project in the City of Lee's Summit, Missouri, and Burns served as design engineer and consultant. While operating heavy earthmoving equipment, Torson employees were charged with striking a gas pipeline owned by the Gas Service Company. Gas Service employees were called to the scene to repair the gas main and were seriously injured when a spark ignited leaking gas and caused an explosion. The Gas Service Company and its two employees filed separate civil actions to recover for property damage and personal injuries suffered as a result of the explosion. The lawsuits were filed against Torson, Burns, and the City of Lee's Summit.

On July 21, 1983, Burns tendered its defense of these claims to Torson, pursuant to an indemnity clause contained in the

contract between the City of Lee's Summit and Torson. The contract stated in relevant part:

"The CONTRACTOR [Torson] will indemnify and hold harmless the OWNER [City of Lee's Summit] and the ENGINEER [Burns] ... from and against all claims, damages, losses and expenses including attorney's fees arising out of or resulting from the performance of the WORK, provided that any such claims [etc.] ... is caused in whole or in part by any negligent or willful act or omission of the CONTRACTOR...."

On August 11, 1983, Torson refused Burns' demand for indemnification. As a result, Burns was forced to assume its own defense and on November 30, 1983, filed a crossclaim for contractual and common law indemnity against Torson.

On May 7, 1986, the plaintiffs voluntarily dismissed their claims against Burns and the City of Lee's Summit with prejudice. On that same day, Burns dismissed its crossclaim against Torson without prejudice. Later in 1986, Torson paid plaintiffs approximately $341,500.00 in settlement of their claims.

On October 7, 1986, Burns made demand upon Torson for payment of $43,802.19 in attorney's fees and costs incurred while defending the plaintiffs' lawsuits. On October 31, 1988, Torson rejected Burns' demand. Burns filed the instant action for indemnification on May 18, 1990.

Torson moved for summary judgment claiming that Burns' cause of action was barred by § 516.120, arguing it accrued when Torson rejected Burns tender of defense on August 11, 1983. In response, Burns argued that its cause of action for indemnity accrued on May 7, 1986, the date the plaintiffs' lawsuits against Burns were settled and dismissed with prejudice. The trial court decided Burns' cause of action accrued on October 25, 1983, when the crossclaim was filed against Torson in the underlying action.[1] The court found Burns

had decided to treat the indemnification agreement as broken at that time and granted Torson's motion for summary judgment, holding that Burns' lawsuit was filed after the five year statute of limitations had passed. This appeal follows.

Burns claims the trial court erred because a cause of action for indemnity does not accrue until there has been a final settlement or judgment. In other words, Burns contends its cause of action did not accrue until the plaintiffs dismissed their lawsuits against Burns with prejudice on May 7, 1986.

Torson argues the character of the damage sustained by Burns is specifically for defense costs (in this case, costs and attorney fees); that this damage contemplates "loss", not "liability"; and that Burns' loss was "capable of ascertainment" in 1983. Therefore, Torson claims that once it refused to defend the claims and Burns began incurring attorney's fees, the statute of limitations for Burns' cause of action began running at that time.

Both parties concede the applicable limitations period is five years as prescribed by § 516.120. The issue to be decided then is which event triggered the running of the five year statute of limitations.

■ The filing of an action by a plaintiff against an indemnitee does not begin the running of the statute of limitations. *State ex rel. Gen. Elec. Co. v. Gaertner,* 666 S.W.2d 764, 766 (Mo. banc 1984). An action for indemnity is separate and distinct from the tort claim asserted by the plaintiff against the defendant. *Id.*

■ It should also be noted, that although Burns tendered its defense to Torson in 1983, and Torson refused to defend the tort action, this refusal did not breach any provision of the contract and consequently would not commence the running of the limitation period for the indemnity claim.[2] The rules applicable to the con-

---

1. This date contained in the trial court's order appears to be in error because it is identified as November 30, 1983 in all other documents of

record. However, the inconsistency does not affect the outcome of the appeal.

2. It is well settled that a tender of defense is ordinarily a prerequisite to the recovery of at-

struction of contracts apply generally to indemnification agreements. *Teter v. Morris*, 650 S.W.2d 277, 282 (Mo.App.1982). Giving the contract language its plain meaning, there is no covenant requiring Torson to defend the tort actions. Even if there was a duty to defend, such a duty is independent of indemnity and would not effect the accrual of an action for indemnification. *See INA Ins. Co. of North America v. Valley Forge Ins. Co.*, 150 Ariz. 248, 722 P.2d 975, 982 (App.1986) and 42 C.J.S. *Indemnity* § 4 (1991). The tender of the defense was in essence an offer to allow Torson to regulate the amount of money expended on legal fees in the tort lawsuits. Torson's refusal had no effect on Burn's right to indemnification.

That brings us to determine whether the filing of Burns' crossclaim in the tort action commenced the running of the statute of limitations.

We recognize that indemnity contracts are of two kinds, those against loss and those against liability. *Superintendent of Ins. v. Livestock Mkt. Ins. Agency, Inc.*, 709 S.W.2d 897, 903 (Mo.App.1986). In either case, the cause of action accrues when the covenant is breached. *Id.* If the indemnity is against loss, the cause of action accrues when the indemnitee sustains actual loss. This contemplates actual payment by the indemnitee for the obligation which the party has been found liable. *Ruysser v. Smith*, 293 S.W.2d 930, 933–34 (Mo.1956); *Moberly v. Leonard*, 339 Mo. 791, 99 S.W.2d 58, 63 (1936).

If the indemnity is against liability, the cause of action accrues as soon as liability occurs, and no actual loss need be shown. *Superintendent*, 709 S.W.2d at 903. However, this type of indemnity cannot accrue until an indemnitee's liability has become "fixed and established." *See Moberly*, 99 S.W.2d at 63. The mere assertion of a claim against the indemnitee does not "fix and establish" liability, but only subjects the party to potential liability to be deter-

mined with the outcome of the lawsuit. Therefore, a cause of action for indemnity against liability cannot accrue until the claim against the indemnitee is completely resolved. Only then is the party's liability "fixed and established."

There are also contracts where indemnification against loss and liability are intermixed. *Superintendent*, 709 S.W.2d at 903. The indemnification contract at issue in this case is such a contract. First, the contract provides that Torson will indemnify and hold Burns harmless against all "damages, losses and expenses, including attorney's fees." This language contemplates indemnification for "loss." The contract also agrees to indemnify and hold Burns harmless against all "claims." The use of the word "claims," while not expressly so designating, indemnifies Burns from any liability which it might incur.

The word "liability" is a broad legal term and includes "almost every character of hazard or responsibility, absolute, contingent or likely"; and the "condition of being actually or potentially subject to an obligation." Black's Law Dictionary 823 (5th ed. 1979). The term also applies to "unliquidated claim[s]." *Id.* As used in indemnity contracts, the term "claim" has been interpreted as referring to indemnity against liability. *See Ruysser*, 293 S.W.2d at 934–35; *Moberly*, 99 S.W.2d at 63; and *Bond Diamond Co. v. Wilson*, 325 S.W.2d 63, 66 (Mo.App.1959).

The triggering event would not be the filing of Burns' crossclaim. The crossclaim was for contractual and common law indemnification. The filing of the crossclaim was appropriate, since a third party claim for indemnity may be filed before it accrues, in order to accommodate and facilitate the whole litigation between the parties. *Bond Diamond*, 325 S.W.2d at 66 and Rule 55.32(f). *See generally Anixter Bros., Inc. v. Central Steel & Wire Co.*, 123 Ill.App.3d 947, 79 Ill.Dec. 359, 363–64,

torney's fees and costs incurred by a indemnitee resulting from defense of the underlying suit. *See Ward v. City Nat'l Bank & Trust Co.*, 379 S.W.2d 614, 620–21 (Mo.1964). However, this principle does not apply where the indemnity

contract expressly provides for reimbursement of attorney's fees and expenses, such as in the present case. *See Missouri Pacific Ry. Co. v. Rental Storage & Transit Co.*, 524 S.W.2d 898, 912 (Mo.App.1975).

463 N.E.2d 913, 917–18 (1984) applying Illinois law. The fact the crossclaim was contingent in nature does not preclude its filing. *Bond Diamond*, 325 S.W.2d at 66.

When the crossclaim was filed there remained a number of issues as to Burns' potential liability and losses. At that time, neither the fact of Burns' damage nor the extent of damage was capable of ascertainment. These determinations were unquestionably dependent upon the outcome of plaintiffs' claims against Burns and until that time, the cause of action for indemnity did not accrue. The trial court incorrectly determined that Burns could elect to treat the indemnification agreement as broken at the time it filed its crossclaim. That decision was *not appropriate because of the mandate of* § 516.100.

Section 516.100 expressly states, that "for the purposes of §§ 516.100 to 516.370 the cause of action shall not be deemed to accrue ... [until] the damage resulting therefrom is *sustained* and *capable of ascertainment,* and, if more than one item of damage, then the last item, so that *all* resulting damage may be recovered, and complete relief obtained." [Emphasis added].

Respondent claims that because Burns is only seeking indemnity for costs and attorney fees, the damage was "capable of ascertainment" when Burns first became aware it would have to defend the underlying action. The argument requires us to ignore the other items for which Torson might have been responsible to Burns. At this point it had not been determined whether Burns would be responsible not only for its attorney fees, but also for court costs and related litigation expenses. There also remained complete uncertainty as to whether Burns was responsible for payment of a judgment or settlement due to Torson's negligence. We are not persuaded to accept Torson's severing of the indemnity contract.

■ The contract must be considered as a whole and not from an isolated covenant contained in a provision of the contract.' *See Ruysser,* 293 S.W.2d at 933. Where the contract is not limited to a single item of liability or loss, but includes *any* amounts which might be recovered, the statute of limitations for bringing a claim on indemnity does not begin to run until all the loss or damage is sustained by the indemnitee. *See Caldwell v. McKenna,* 54 Idaho 552, 33 P.2d 366, 369 (1934), (citations omitted). This is consistent with § 516.100 which declares the "last item" of damage must be "sustained and capable of ascertainment", where there is more than one item of potential damage.

■ As stated above, the contract indemnified for both loss and liability. Clearly, several items of damage or "loss" are contemplated from the agreement and until *all* resulting damage is *sustained* and *capable of ascertainment,* no cause of action exists. Until the dismissal with prejudice in May, 1986, there were several items of potential damage lingering, not the least of which would be a possible judgment against Burns in favor of the plaintiff. Without a final determination of all these items of damage, Burns cause of action for indemnity could not accrue pursuant to § 516.100.[3] This reasoning is consistent with our policy in favor of avoiding a multiplicity of suits. *See Sabine v. Leonard,* 322 S.W.2d 831, 838 (Mo. banc 1959).

Finally, respondent expresses concern because there was never an adjudication of liability, but a dismissal. The concern is misplaced, because a dismissal does not negative the right to indemnity. 41 Am. Jur.2d *Indemnity* § 33 (1968). In fact, if Burns had settled with the plaintiffs for a reasonable sum, Torson might well have been liable to Burns for reimbursement.

Based on the foregoing, we conclude Burns' last item of damage was first capable of ascertainment no earlier than May 7,

---

**3.** If the only items to be indemnified were the attorney's fees and expenses, then Torson might have a plausible argument that any payments made by Burns prior to the five year period immediately preceding the filing of Burns' claim for indemnity in 1990 were barred by § 516.120. *See Davis v. Laclede Gas Co.,* 603 S.W.2d 554, 556 (Mo. banc 1980). However, this was not the case, because the agreement indemnified against several items.

1986, when Burns was dismissed from the plaintiff's lawsuit with prejudice, and its cause of action for indemnification did not accrue until that time. Therefore, we reverse the decision of the trial court and remand with directions to reinstate the plaintiff's lawsuit.

All concur.