GEORGE E. MCINTYRE, RESPONDENT, v. KANSAS CITY, MISSOURI, A MUNICIPAL CORPORATION, APPELLANT.—171 S. W. (2d) 805.

Kansas City Court of Appeals.   May 3, 1943.

*William E. Kemp,* City Counselor, and *John J. Cosgrove,* Assistant City Counselor, for appellant.

*Hogsett, Trippe, Depping & Houts* and *J. F. Allebach* for respondent.

BOYER, C.—Defendant city appeals from a judgment in favor of McIntyre in the sum of $2110. The main question for determination on appeal is whether the five or ten-year Statute of Limitation applies to plaintiff's cause of action as shown by the petition and the evidence. A written contract between the parties is involved in the suit. Plaintiff alleged a breach of this contract and contends that his cause of action is founded upon a writing for the payment of money within the meaning of Section 1013, Revised Statutes Missouri 1939, and that the ten-year Statute of Limitation applies. Appellant contends to the contrary and claims that the cause of action is for damages on account of the alleged breach of the contract in question and is barred by Section 1014, Revised Statutes 1939, because suit was not filed within five years after the cause of action accrued. The parties differ as to the nature of the action and the character of the written contract mentioned in the petition, shown in evidence, and involved in the suit. It is therefore deemed advisable that the petition and the contract be fully set forth, together with the substance of the other pleadings and the evidence.

The petition was filed in the Circuit Court of Jackson County, August 25, 1939, and omitting caption and signatures, it reads as follows:

"Plaintiff for his cause of action against defendant states:

"The defendant is now and at all times herein mentioned was a municipal corporation duly organized and existing according to the laws of Missouri, and having a special charter pursuant to the provisions of the Constitution of Missouri. Plaintiff is now and at all times herein mentioned was an architectural engineer.

"On June 8, 1932, a contract was made and entered into and signed by defendant and plaintiff by the terms of which defendant employed the plaintiff, and plaintiff accepted employment, to plan, design, direct and supervise the construction of a viaduct to be constructed by the defendant in Swope Park connecting the Blue River Road with a road leading to the county highway on the south end of said Swope Park. Defendant agreed to pay plaintiff as compensation

for his services the sum of five per cent of the total amount of the actual cost of the construction of said viaduct.

"Ever since said contract was made and entered into as aforesaid, plaintiff has at all times been willing, ready and able to comply with, carry out and perform all the obligations and duties imposed upon and required of him under and by virtue of the terms of said contract, but the defendant in direct violation thereof, has breached said contract in the following particulars, to-wit:

"After said contract was entered into plaintiff prepared all maps, plans and specifications required in connection with the construction of said viaduct and submitted said maps, plans and specifications to the defendant, and said maps, plans and specifications were fully approved by defendant, by its Board of Park Commissioners and its engineers; thereafter the defendant delayed, neglected and refused to proceed to advertise for bids for the construction of said viaduct or to construct said viaduct, and refused to permit plaintiff to perform the remainder of the services required of him under said contract, and in direct violation of plaintiff's said contract defendant caused to be installed at the place described in the aforesaid contract as the location for said viaduct a dirt fill.

"Plaintiff states that had defendant not breached said contract as aforesaid and plaintiff had been permitted and allowed to complete the services provided for in said contract plaintiff would have derived and made a profit out of the services called for in said contract in the sum of $7250, the total actual reasonable cost of said viaduct would have been $165,000, and had defendant not breached said contract plaintiff would have received as compensation the sum of $8250, of which sum his profit would have been $7250. Defendant has paid plaintiff the sum of $2700 and on June 2, 1939, refused to pay plaintiff any further compensation.

"By reason of the acts and conduct on the part of defendant in breaching plaintiff's said contract as aforesaid, he has by the direct result thereof been damaged in the sum of Four Thousand Five Hundred Fifty Dollars ($4550).

"WHEREFORE, plaintiff prays judgment against defendant in the sum of Four Thousand Five Hundred Fifty Dollars ($4550) with interest thereon from June 2, 1939, together with his costs in this behalf expended."

Defendant's second amended answer admits that defendant is a municipal corporation with a special charter, but denies generally the other allegations of the petition. And for further answer states that plaintiff's cause of action, if any, is barred by the Statute of Limitations in that the same is of that class of actions upon which suit must be brought within five years after the accrual thereof as provided by Section 1014, Revised Statutes Missouri 1939, and that the present action was not brought until more than five years there-

after. The answer further pleads that if plaintiff was hired as alleged in his petition the employment was for the purpose of preparing plans and supervising construction of a viaduct at an estimated cost of $60,000; that plaintiff abandoned said contract in that he prepared plans and specifications for a viaduct costing in excess of $125,000, and that when defendant learned.of the estimated cost of the viaduct based upon said plans and specifications, it refused to continue the employment of plaintiff on such basis; that defendant has paid plaintiff $2700, in full discharge of any and all obligations which might have been owing to plaintiff. The answer also contained a plea of a long established custom that in the employment of architects, such as in plaintiff's case, it was understood that the proponent of any project requiring the preparation of plans and specifications was free to abandon the same at any time and that the architect was entitled to compensation for only such part of the work as was completed at the time of such abandonment.

Plaintiff filed reply in the nature of a general denial, and on the day of trial filed his motion for an order to strike from the answer the plea of limitation for the reason that plaintiff's suit is on a written contract between the parties and is not controlled by Section 1014, Revised Statutes Missouri 1939; and also moved the court to strike from the answer the plea of an established custom. Final ruling on the motion was reserved until the close of plaintiff's evidence, at which time the motion was sustained in part and the plea of limitation contained in the answer was stricken, and the court said: "I have concluded that this is a suit upon a contract and not a suit in tort for a tortuous breach of the contract."

The trial proceeded and at the close of all the evidence the court refused defendant's peremptory instruction in the nature of a demurrer to all the evidence, and refused all of defendant's tendered instructions except one submitting the question as to whether or not there was a·custom such as that pleaded in the answer. The case was submitted upon plaintiff's instruction and ten jurors signed a verdict reading as follows: "We, the undersigned jurors, find the issues for the plaintiff and do assess his damages at $2110."

The assignments of error and points briefed by both parties include the question of limitation arising upon the demurrer to the evidence and the action of the court in striking the plea of limitation from the answer, and the ruling of the court in giving and refusing· instructions.

Plaintiff testified and put in evidence the contract referred to as his Exhibit 1, which, omitting signatures, reads as follows:

## "CONTRACT

"THIS AGREEMENT, made and entered into in triplicate, by and between Kansas City, Missouri, a municipal corporation, acting

through its Board of Park Commissions, party of the first part, hereinafter called the City, and George E. McIntyre, architectural engineer of Kansas City, Jackson County, Missouri, party of the second part, hereinafter called the Engineer.

"WITNESSETH:

"That the parties hereto, in consideration of the mutual covenants herein contained agree as follows:

"Section 1. The City hereby employs the Engineer and the Engineer hereby accepts said employment upon the terms and conditions herein contained.

"Section 2. The engineer shall plan, design, direct and supervise the construction of a viaduct to be constructed by the City, acting through its Board of Park Commissioners, in Swope Park connecting the Blue River Road with a road leading to the County Highway on the south end of said Swope Park and shall prepare all maps, plans and specifications required in connection with said work and the letting of the contract or contracts therefor, and in addition, the Engineer shall prepare such contract forms, building plans, advertisements and notices to bidders as may be required by said Board of Park Commissioners or its Engineer. The construction of said viaduct shall be carried on under the administrative direction of the agencies of the City designated by the City Charter to have jurisdiction in the premises, and the Engineer for the Park Department of the City shall have general supervisory control of the construction of said viaduct.

"Section 3. In consideration of the performance of all of said services by the Engineer, the City shall pay him, and the Engineer shall receive as full compensation for all such services, the sum of five per cent of the total amount of the actual cost of the construction of said viaduct, payable out of the Park and Boulevard Improvement Bond Fund, 4th issue, to be paid in three installments, as follows:

"(a) Two per cent of the total cost of said work upon the execution and delivery of this contract, based upon the estimated cost of $60,000.

"(b) Two per cent upon the awarding of the general contract for the construction of said viaduct based upon the estimated cost of $60,000.

"(c) The remaining unpaid balance of said five per cent of the total cost of said work of construction of said viaduct shall be paid at the time of the completion and acceptance by the City of the entire work of construction of said viaduct.

"IN WITNESS WHEREOF, This contract is, on this 8th day of June, 1932, duly executed by Kansas City, Missouri, by its Board of Park Commissioners and by George E. McIntyre, the parties hereto."

There is no question raised as to the contract having been properly authorized and duly signed in behalf of the city by the Board of

Park Commissioners, acting through its president and secretary. The substance of plaintiff's testimony is that after signing the contract he received the first payment thereunder on the same day or the following day in the sum of $1200; that he then proceeded to make drawings for the bridge and in doing so conferred with the superintendent of parks, the park engineer, and an additional consulting engineer who had been employed by the Board to confer with plaintiff and to check his work; that he conferred many times with said consultant and with the representatives of the Park Board in reference to the type of bridge that was required; that at the time the contract was signed the width of the roadway and other features of the bridge had not been determined; that after several conferences he was finally instructed by the superintendent of parks to design a bridge with a fifty-foot roadway with a six-foot sidewalk on each side and ornamental guardrails; that he prepared plans and specifications for such a structure which were approved by the consulting engineer as evidenced by a letter to the Board under date of September 21, 1932. The plans for the structure were represented by Exhibits 3 to 9 inclusive. These exhibits bear the date July 14, 1932. They were approved by resolution of the Board July 21, 1932. Plaintiff says he also tendered to the Board specifications for the structure shown in the plans, said specifications being offered in evidence as Exhibit No. 10; that he also had forms prepared for letting a contract and for advertisement and notice to contractors; that nothing was done thereafter; that he saw different members of the Board at various times and inquired when they wanted to proceed with the work and was informed that they were not ready; that he was not given any positive reason except that the money was not available at that time; that they did not tell him the bridge could not be built because of the excessive cost; that he was always ready, willing and able to perform under the contract, and that he never learned that the city had abandoned it until sometime in 1939, when he read in some paper or magazine that the work was listed as one of the WPA projects in Kansas City; that previous to that time he had never been told by anyone representing the city that the city had abandoned this project under his plans because of the excessive cost or for any other reason.

It was developed on cross-examination that on July 28, 1932, plaintiff addressed a letter to the Board of Park Commissioners in which he stated that he had made careful estimates of the cost of the bridge according to the plans submitted on July 21, and that his estimates showed that the cost of the improvement would be approximately $125,000, and further stated that ''under the terms of my contract I was to receive an initial payment of two per cent (2%) of the estimated cost. I am therefore submitting herewith statement showing amount I should have drawn and the balance due.'' Accompanying the letter was a statement for professional services of two per cent

of the estimated cost of $125,000, showing credit of $1200 and a balance due of $1300. This bill was not recognized in any way or paid at the time, but plaintiff made repeated demands for further payments and stated that in December, 1932, he received an additional payment from Mr. McElroy, the City Manager. Other evidence shows that this payment was in the sum of $1000, and that further payments were made on February 24, 1933, in the amount of $300, and on March 16, 1933, in the sum of $200, making total payments admitted to have been received by plaintiff in the sum of $2700. From September, 1933, until December, 1934, plaintiff was continuously engaged in work in the State of Texas, and immediately thereafter went to Jefferson City, where he was continuously engaged as a structural engineer until October, 1938. Plaintiff stated that he had never been called back on the Kansas City job and if he had been he could have taken care of it. He also said that it would have taken from six to nine months to complete the bridge called for in the plans which he presented.

The only other witness for the plaintiff was the secretary of the Board of Park Commissioners. He was secretary from 1931 until 1940. He testified in part that the Board had approximately $60,000 to spend on the bridge; that a previous Board had recommended that amount; that at the time of the contract with plaintiff the money had not been realized from the sale of bonds; that when plaintiff presented his plans to the Board he was referred to the engineering department; that the Board did not advertise for bids and nothing further was done at the time because they didn't have over $60,000 to spend; that there was considerable discussion about the excessive cost of the viaduct under plaintiff's plan and he was informed that the money was not available. On May 25, 1939, plaintiff, through his attorney, filed an application with the Board for an additional allowance which application was denied June 1, 1939, and the secretary stated that so far as he knew that was the first official action taken by the Board that they would not pay plaintiff any more under the contract. On cross-examination of this witness it was shown that an advisory committee for the expenditure of park funds had allocated approximately $75,000 for the bridge in question, including the approaches, and that the Park Board was so advised and attempted to follow as nearly as practicable the amount allocated by the committee in its expenditures; that when plaintiff presented his plans for the bridge he was referred to the engineer for the Park Board to determine what the cost of the bridge would be, and the engineer thereafter reported it would cost about $146,000; that nothing further was done by the Board under the plans presented by plaintiff, and later on the Board adopted a culvert form urged by Mr. Cromwell. This witness further stated that he had previously testified in his deposition that in the Fall of 1932, the Board decided to withhold the construction and informed Mr. Mc-

Intyre that they could not proceed with the construction of the work, and witness said that answer was true, and that McIntyre was informed that they could not go on, and that he knew they had abandoned it; that witness personally informed Mr. McIntyre in the Fall of 1932 that in his opinion he did not think the bridge called for in his plans would ever be built.

Mr. Cromwell, who was formerly mayor of Kansas City, and a member of the Park Board in 1932, testified that after a bond issue had been authorized certain moneys were allocated for the viaduct in question. He said: "It was voted in the bond issue at $75,000 to take care of the viaduct and approaches," and that it was generally understood by members of the Board that there was $75,000 to be spent for that purpose; that Mr. McIntyre had been advised of the limitation of this amount and that "the amount had been stated many, many times"; that at the time plaintiff's plans were presented to the Board and approved, Mr. McIntyre did not inform the Board that the Bridge would cost over $60,000, and that no specifications were submitted at that time and they were not approved; that they were submitted to the park superintendent and engineer for the Board to report back the cost, and the engineer for the Board reported that the cost would be anywhere from $145,000 to $150,000 to build the viaduct according to the plans submitted by McIntyre; that it was definitely decided by the Board that they would not go ahead with the improvement and that McIntyre was so informed. "Q. When did you tell him? A. I met him several times on the street, at different places, and he would ask me what we were going to do about it, and I would tell him very definitely that we were not going ahead. Q. You didn't tell him you were holding it up and waiting for more money? A. No, we had made our decision."

Mr. Lewis, the engineer for the Park Board at the time of the contract with plaintiff, testified in reference to the bond issue that certain money was allocated to the various city departments, and that $75,000 was allocated for the construction of the viaduct in question; that he estimated the cost of construction of a viaduct called for by the plans presented by plaintiff to be $146,000, and so informed the Board; that the amount made it impossible to go ahead, "and it was so considered by the Board and everyone concerned."

Defendant also offered testimony of an architect and a consulting engineer to the effect that it was the custom and practice in doing work for the city when compensation was based on a per cent of the total cost of a project which was never built that they would receive pay only for the work actually performed. Plaintiff testified in rebuttal, in answer to a hypothetical question based on his evidence in the case, that he had never heard of any such custom or practice.

Appellant contends that the court erred in overruling its demurrer to the evidence and in striking out defendant's plea of the five-year

Statute of Limitations. Respondent says: "This is a suit to enforce a promise to pay money in writing and the ten-year Statute of Limitations is applicable." Part of Section 1013, Revised Statutes 1939, providing what actions shall be commenced within ten years, is in these words: First, an action upon any writing, whether sealed or unsealed, for the payment of money or property;". Part of Section 1014, Revised Statutes 1939, providing what actions shall be brought within five years, contains these words: "First, all actions upon contracts, obligations or liabilities, express or implied, except those mentioned in Section 1013,". Which section applies to plaintiff's case must be determined by the nature of the action, and the nature of the action necessarily depends upon an interpretation of the petition and the underlying contract.

The petition identifies a certain contract of employment dated June 8, 1932, whereby plaintiff was engaged to plan, design, direct and supervise the construction of a viaduct, and that plaintiff was to receive as compensation for his services the sum of five per cent of the total amount of the actual cost of the construction of said viaduct. The petition then alleges that plaintiff prepared maps, plans and specifications required for the construction of the viaduct and that they were approved by defendant, and "thereafter the defendant delayed, neglected and refused to proceed to advertise for bids for the construction of said viaduct or to construct said viaduct, and refused to permit plaintiff to perform the remainder of the services required of him under said contract." Also, "plaintiff states that had defendant not breached said contract as aforesaid and plaintiff had been permitted and allowed to complete the services provided for in said contract plaintiff would have derived and made a profit out of the services called for in said contract in the sum of $750." There are other allegations as to what the total cost of the structure would have been; that plaintiff had received the sum of $2700, and that defendant refused to pay more, and then the following: "By reason of the acts and conduct on the part of the defendant in breaching plaintiff's said contract as aforesaid he has by the direct result thereof been damaged in the sum of Four Thousand Five Hundred Fifty Dollars ($4550)."

The contract provides in Section 3 thereof for the payment of compensation in installments as provided in paragraphs (a), (b), and (c) of said section. These paragraphs are of special significance and read as follows:

"(a) Two per cent of the total cost of said work upon the execution and delivery of this contract, based upon the estimated cost of $50,000.

"(b) Two per cent upon the awarding of the general contract for the construction of said viaduct based upon the estimated cost of $60,000.

"(c) The remaining unpaid balance of said five per cent of the total cost of said work of construction of said viaduct shall be paid at the time of the completion and acceptance by the City of the entire work of construction of said viaduct."

In view of the allegations of the petition and the foregoing provisions of the contract can it be maintained that this is "an action upon any writing for the payment of money"? According to the authorities cited and reviewed upon the subject, it does not appear to be such an action, but falls in the class of cases arising upon an alleged wrongful breach of contract which affords a legal basis for an implied *assumpsit* to pay damages caused by the breach. The petition expressly charges a breach of the contract and that plaintiff "has by the direct result thereof been damaged," and the jury assessed "his damages," all of which give color to the true intendment of the pleader and the nature of the proceeding. Moreover, the provisions of the contract for the payment of money are all conditional. There is no unqualified promise to pay money. Two per cent of an estimated cost of $60,000 was payable upon execution of the contract and $1200 was then paid. Two per cent of an estimated cost of $60,000 was to be paid upon the awarding of the general contract for the construction of the viaduct. No bids for the construction of the viaduct were ever called for and no contract was ever awarded. The remaining balance of five per cent of the total cost of the work was to be paid at the time of completion and acceptance by the city. The viaduct was never built. All of the foregoing is shown by statements of the petition and by plaintiff's evidence. The conditional promises for payment set forth in paragraphs (b) and (c) of Section 3 of the contract never became absolute obligations on the part of defendant and liability therefor never became fixed, because no promise based upon a condition can be enforced as such until the contingency upon which it depends has happened. The suit is not founded on a promise for the payment of money arising from the *words* of the written contract within the meaning of Section 1013, *supra*.

The foregoing statements are based mainly upon the decision in the case of Parker-Washington Co. v. Dennison, 267 Mo. 199, 183 S. W. 1041. The opinion of the court en banc, on page 206 of the State Report, contains the following:

"In order to bring an 'action upon any writing for the payment of money or property' (R. S. 1909, sec. 1888), it must appear in the statement of the cause of action that the money or property sued for is promised to be paid or given by the language of the writing, and that such promise does not arise only upon proof of extrinsic facts. That nothing else meets the requirements of the statute, has been uniformly held whenever it has been under review."

And on the following page:

"The fact that defendants tortiously prevented the happening of the contingency upon which their contractual obligations would have arisen, cannot be held to make a contract for them contrary to the terms in which their contract was expressed in the written agreement. Such wrongful conduct would constitute a legal basis for an implied assumpsit on their part to pay the damages caused thereby, but it could not alter the terms of the *conditional promise to pay,* as used in the written contract."

Under the contract in this case, in order for plaintiff to maintain an action on a writing for the payment of money, it would have been necessary to plead and prove the fulfillment of the conditions upon which payment was to be made. If the contract for the construction of the viaduct had been awarded, and if the viaduct had been built and accepted, and defendant had refused to pay the amount agreed to be paid on said contingencies, then plaintiff could have maintained an action on a writing for the payment of money according to the promises contained in the contract, and could have recovered the amount shown to be due. But the pleading, the contract, and the evidence in this case give plaintiff's action the character of a suit for damages for a breach of the contract. It is not based upon an absolute and fixed liability of defendant evidenced by a writing to pay money, and the five-year Statutes of Limitations applies.

Respondent seeks to distinguish the decision in the Parker-Washington case and contends that it is not controlling under the facts in the pending case; and further relies upon a rule announced in the dissenting opinion in the Parker-Washington case. Respondent further contends that the decision in the case of Knisely v. Leathe, 256 Mo. 341, 166 S. W. 257, holding that the ten-year statute applied in that case, should control here. The case is not in point on the facts. The amount to be paid was definitely fixed in the contract. Events rendered the promise to pay consummate, and liability became absolute under the terms of the agreement before suit was filed. The Knisely case was cited in the opinion in the Parker-Washington case and given full consideration in the concurring opinion where its distinguishing features are enumerated. Consideration has been given to all of the argument of counsel, and the conclusion has been reached that the decision in the Parker-Washington case and later decisions confirming it control the disposition of the pending case. [Cf. Herweck v. Rhodes, 327 Mo. 29, 32, 34 S. W. (2d) 32; Lively v. Tabor, 341 Mo. 352, 360, 107 S. W. (2d) 62; Mitchell v. Health Culture Co., 349 Mo. 475, 482, 162 S. W. (2d) 233; Baron v. Kurn, 349 Mo. 1202, 164 S. W. (2d) 310; Bisesi v. Farm & Home S. & L. Assn., 231 Mo. App. 897, 902, 78 S. W. (2d) 871.]

Plaintiff's case was barred by Section 1014, Revised Statutes Missouri 1939, provided the cause of action accrued more than five years before the suit was filed. The contract in this case was signed June

8, 1932. The work actually performed by plaintiff by the preparation of plans and specifications all appears to have been done by July 28, 1932. According to plaintiff's evidence nothing further was done by the city relative to the building of the viaduct, and he claims that he did not know the city had actually abandoned the project until sometime in 1939. Suit was filed August 25, 1939. Five years prior thereto was August 25, 1934, and before that date plaintiff either knew or could have known by the exercise of reasonable diligence that the city had definitely abandoned the project which he had planned. Inaction for more than two years was sufficient to put him on notice. All the evidence, except that of plaintiff himself, is positive and to the effect that upon learning the estimated cost of the viaduct according to plaintiff's plans the Board decided not to build it, and that plaintiff was definitely informed of that fact. If plaintiff did not know that fact, as he asserts, he had over two years' time within which to ascertain it, and he will be held to have known what reasonable diligence and inquiry would have revealed. The means of discovery were in his power, and he should be charged with knowledge of the fact that the city declined to proceed, and that a breach, if any, of the contract had occurred long before the beginning of the five-year period which would bar an action for the breach.

A pronouncement of the court in Shelby County v. Bragg, 135 Mo. 291, 300, is appropriate here:

"Statutes of limitation are favored in the law and can not be avoided unless the party seeking to do so brings himself strictly within some exception. 'A party seeking to avoid the bar of the statute on account of fraud must aver and show that he used due diligence to detect it, and if he had the means of discovery in his power, he will be held to have known it.' [Wood v. Carpenter, 101 U. S. 141; Buckner v. Calcote, 28 Miss. 434; Nudd v. Hamblin, 8 Allen, 130.] A party can not avail himself of this exception to the statute where the means of discovering the truth were within his power and were not used. [Cole v. McGlathry, 9 Me. 131.]

"In *Wood v. Carpenter, supra,* these, among other conclusions, were drawn after a careful survey of the authorities: 'Concealment by mere silence is not enough. There must be some trick or contrivance intended to exclude suspicion and prevent inquiry. There must be reasonable diligence; and the means of knowledge are the same thing in effect as knowledge itself.'"

The foregoing is cited with approval and applied in Baron v. Kurn, 349 Mo. 1202, 1214, 164 S. W. (2d) 310.

Plaintiff's cause of action, if any, accrued within a reasonable time after defendant refused to do anything further under the contract, and it accrued more than five years prior to filing suit. The city was entitled to plead and make the defense of limitation. The learned trial court was in error in denying that privilege and in overruling

the demurrer to the evidence. Plaintiff was not entitled to recover. The judgment should be reversed. The Commissioner so recommends. *Sperry, C.*, concurs.

PER CURIAM:—The foregoing opinion of BOYER, C., is adopted as the opinion of the court. The judgment is reversed. All concur.