**SUPERINTENDENT OF INSURANCE OF the STATE OF NEW YORK, as Liquidator of Summit Insurance Company of New York, Appellant,**

v.

**LIVESTOCK MARKET INSURANCE AGENCY, INC., Respondent.**

**No. WD 36215.**

Missouri Court of Appeals,
Western District.

March 25, 1986.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 24, 1986.

Application to Transfer Denied
June 17, 1986.

Bernard L. Balkin, Lloyd S. Hellman, Sandler, Balkin, Hellman & Weinstein, Kansas City, for appellant.

Gerard D. Eftink, Van Hooser & Olsen, Kansas City, for respondent.

Before LOWENSTEIN, P.J., SHANGLER, J., and SOMERVILLE, Senior Judge.

SHANGLER, Judge.

This is a civil action for money damages on a written contract brought by the Superintendent of Insurance of the State of New York, as Liquidator of Summit Insurance Company of New York [Summit] against Livestock Market Insurance Agency, Inc. [LMIA]. The suit was brought by the Superintendent as assignee of Associated Surety [a Summit general agent] of its right of indemnity under a subagency contract with LMIA. The issue to the trial court, and on this appeal, is whether that provision of indemnity amounts to a promise to pay. If so, the ten-year statute of limitations in § 516.110, RSMo 1978, appertains. If not, the five-year statute of limitations in § 516.120, RSMo, appertains. The case was tried to the court, and judgment was rendered against the plaintiff Superintendent on the determination that § 516.120 appertains, and the action was barred by limitations.

Associated Surety Agents, Inc. was a general agent for Summit. A term of the agreement of general agency exposed Associated Surety to liability to Summit for underwriting losses in excess of the premiums generated by Associated Surety. The liability was calculated under a formula which allocated credits for premiums and debits for bond payouts. Associated Surety was liable, by that term of agreement, to pay to Summit the excess of debits over credits. The arrangement was designated a retrospective profit-commission agreement.

On September 1, 1972, Associated Surety designated LMIA as its subagent under a written agreement. Paragraph eight provided:

The Agent [LMIA] will indemnify the Company [Associated Surety] and save it harmless from any and all liability, loss cost, damage, claim suits, attorney's fees and expense of any kind and nature which it may sustain or incur as a result of, or in connection with the execution of any bonds written by the Agent.

LMIA was an insurance agency. In its relationship with Associated Surety, the practice was for LMIA to submit proposals for bonds with Associated Surety. Associated Surety, then, placed the bonds with a surety—in this case, Summit.

On February 9, 1974, as authorized by the subagency agreement with Associated Surety, LMIA issued a $70,000 bond with Smith County Livestock Exchange, Inc., of Tyler, Texas [Smith County] as principal, and Summit as surety. On July 26, 1974,

LMIA notified Summit by letter of a potential claim by one, Tindel, under the bond for failure of Smith County to pay for cattle delivered to the insured. Tindel then brought suit in a Texas court to recover the claim. The LMIA financial statement of its 1974 Annual Report established an indemnity reserve and noted, particularly, that

[a]n additional amount of $40,000 of the reserve funds has been set aside in a trust fund to provide for loss on a defaulted bond.

The only LMIA bond in default extant when the statement issued was the bond to Smith County. Tindel recovered judgment on the claim in Texas and, after investigation, on January 8, 1975, LMIA general manager Heimke wrote to Summit to request that a check in the amount of $36,832.27 issue to Tindel and his attorney in settlement of the judgment. Summit, on January 14, 1975, made payment as requested, and thereupon—under the retrospective profit-commission term of the general agency agreement—made claim against Associated Surety for reimbursement of the $36,832.27 paid to Tindel. Summit held letters of credit as security for any Associated Surety liability to Summit under the general agency agreement.

In 1975, Associated Surety filed suit in Hamilton County, Indiana, to enjoin the bank from payment to Summit on the Associated Surety letters of credit deposited with Summit. Summit intervened and counterclaimed against Associated Surety. The counterclaim asserted that under the retrospective profit commission provision of the general agency agreement, the losses exceeded the premiums, and so Associated Surety was indebted to Summit for the difference. Included in that accounting was the specific claim paid by Summit to Tindel under the bond written by LMIA.

In May of 1981, the Indiana court rendered judgment for $1,073,180.70 against Associated Surety and in favor of the Superintendent of Insurance of the State of New York as Liquidator of Summit [an insolvency which, apparently, intervened between commencement of suit and judgment]. The Superintendent as Liquidator, concurrently with that rendition, entered into a covenant with Associated Surety not to execute the judgment upon conditions that Associated Surety pay to the Liquidator the $100,000 letters of credit fund, and assigned to the Liquidator the Associated Surety right of indemnity against LMIA [under the subagency agreement] for losses on bonds written by LMIA, and included in the Indiana judgment. The Liquidator as assignee made demand upon LMIA, and thereafter, the Superintendent as Liquidator brought suit in this state to enforce its claim of indemnity against LMIA under the assignment from Associated Surety. The trial court denied the claim, and that is the judgment under review.

The judgment entered by the circuit court found as fact that Associated Surety assigned to the Liquidator the LMIA promise to indemnify Associate Security for any loss issued by Summit to Smith County. The court concluded as a matter of law, nevertheless, that the cause of action brought by the Liquidator as assignee of promise of indemnity was for breach of contract and not to enforce a promise to pay money. The court determined, therefore, that the five-year limitations period of § 516.120, rather than the ten-year limitations period of § 516.110, applied. The court concluded, also, as a matter of law that the cause of action in suit accrued in 1975 when Summit Insurance Company paid the Tindel claim on the Smith County surety bond, and therefore the petition to enforce the claim brought in 1982 was barred by limitations.

The Liquidator argues on appeal that the LMIA written promise to make indemnity was a promise for the *payment of money* under § 516.110, and hence governed by the ten-year statute of limitations. He argues alternatively and in any event that the cause of action to recover indemnity did not

accrue, for purposes of limitations, until the indemnities suffered loss—that is, until a determination that the indemnity is liable to a third party. On that formulation of principle [the Liquidator argues], the cause of action for indemnity against LMIA accrued in 1981, when the Indiana court adjudicated the Associated Surety liability under the retrospective profit-commission term of the general agency agreement with Summit.

The cause of action the Liquidator pleads against LMIA is to enforce a promise of indemnity: the LMIA promise to Associated Surety to save it harmless against "liability or loss cost ... in connection with the execution of any bonds written by the Agent [LMIA]." An action upon a contract must be commenced within five years [§ 516.120] unless that action is upon a contract in writing for the payment of money—in which event it must be commenced within ten years [§ 516.110].[1] The question, then, is whether the LMIA written promise to Associated Surety is *for the payment of money*.

■ It is the evolved principle of our decisions that, in order for the ten-year limitations period of § 516.110 to appertain, the writing must be not only for the payment of money, but also must contain a *"promise to pay money...."* [emphasis added] *Martin v. Potashnick*, 358 Mo. 833, 217 S.W.2d 379 at 381 (1949). Once that obligation is found from the writing, the exact amount to be paid or other detail of the obligation may be shown by extrinsic evidence—*but not the promise itself.* Id. "[T]he essence of a promise to pay money is that it is an acknowledgement of an indebtedness, *an admission of a debt due and unpaid."* Id. [emphasis added] That rationale yields the concomitant: *"[t]he promise may not be shown by extrinsic*

*evidence* or consist of an obligation imposed by law from the facts of the transaction." *Id.* [emphasis added] Thus, although in *Potashnick*, there was a writing—an open account—that some indebtedness existed, that the debt was due and payable was determinable only by extrinsic evidence, and hence the contract was not a promise to pay money within § 516.110. This rule and cognate maxims have been given repeated and emphatic effect by our decisions.

Thus, in *Sam Kraus Co. v. State Highway Commission*, 416 S.W.2d 639 (Mo. 1967), the supreme court rejected the assertion of the contractor that the highway commission warranty in writing that "no damage would result to any property" from work done in accordance with the specifications was a promise for the payment of money under § 516.110 so as to entitle the contractor to sue the commission within ten years for money paid to a third party whose property was damaged as a result of the work. The court held that the petition "did not seek payment of any sum [the Commission] agreed to pay in the contract," but was only a suit for breach of contract. "[A]n action for breach of contract," the court concluded, "is not an action upon a writing for the payment of money within that ten-year statute and is accordingly governed by the five-year statute." *Id.* at 641. In *McIntyre v. Kansas City*, 237 Mo.App. 1178, 171 S.W.2d 805 (1943), the plaintiff, an architect, contracted in writing to prepare plans for and to supervise construction. The defendant agreed to pay five percent of the cost of construction for the services of the architect. The plans were prepared, but there was no construction. The architect sued for damages for breach of the contract obligation. The court refused to give the contract effect as a promise for the pay-

---

1. Section 516.120 provides:
   Within five years:
   (1) All actions upon contracts, obligations or liabilities, express or implied, except those mentioned in section 516.110....

Section 516.110 provides:
Within ten years:
(1) An action upon any writing, whether sealed or unsealed, for the payment of money or property.

ment of money [and so avoid the effect of the five-year period of limitations]. The court rejected the argument on the ground that in order to maintain an action for payment of money under the contract in suit, extrinsic proof would first have to prove that the contingencies for payment were fulfilled: performance by the architect and nonperformance by the construction contractor. The court concluded: "[T]he pleading, the contract, and the evidence in this case give plaintiff's action the character of a suit for damages for a breach of the contract. *It is not based upon an absolute and fixed liability of defendant evidenced by a writing to pay money,* and the five-year statute of limitation applies." *Id.* 171 S.W.2d at 811.

The evolved rule as expounded in *Potashnick, Kraus* and *McIntyre,* supra, derives from *Parker-Washington Co. v. Dennison,* 267 Mo. 199, 183 S.W. 1041 (1916), which accommodated the variant precedents from *Menefee v. Arnold,* 51 Mo. 536 (1873) to *Knisely v. Leathe,* 256 Mo. 341, 166 S.W. 257 (1914) [2] into the present exemplar [*Id.* 183 S.W. at 1042]:

In order to bring an "action upon any writing for the payment of money or property," *it must appear in the statement of the cause of action that the money or property sued for is promised to be paid or given by the language of the writing,* and that such promise does not arise only upon proof of extrinsic facts ... [N]othing else meets the requirements of the statute .... [emphasis added]

The history of the rule reformulated by the court en banc in *Parker-Washington Co.* has not gone without relapse. In *Mis-*

souri, *K & T Ry. Co. v. American Surety Co.,* 291 Mo. 92, 236 S.W. 657 (banc 1921) [which the Liquidator cites] the court strayed from *Parker-Washington Co.* to enable an action upon a bond of indemnity to be brought within ten years after accrual although the writing sued upon was for the payment of money, and not a promise for the payment of money. In that case the railroad had purchased and paid for ties delivered by a contractor, and thereafter, the timber company sued for the balance due from the contractor, and for a lien. The contractor as principal had given the railroad a bond of indemnity to hold the railroad harmless against any lien and against any loss, damage, costs and fees by reason of claims against the railroad as to any ties furnished by the contractor and accepted by the railroad. The court determined that the bond of indemnity was an instrument for the payment of money, and allowed the action under the ten-year statute *even though the railroad "to make out [its] case, [was] required to go beyond the terms of the writing to show performance on the part of the plaintiff and a breach on the part of the defendant."* [3] Id. 236 S.W. at 663[10] [emphasis added]. To come to decision, the court slighted any mention of *Parker-Washington Co.,* only recently announced, and cited, rather, *Knisely v. Leathe,* 256 Mo. 341, 166 S.W. 257 (1914); *Curtis v. Sexton,* 201 Mo. 217, 100 S.W. 17 (1907) and other cases which the *Parker-Washington Co.* majority accommodated authoritatively. This lapse was only momentary, however. *Missouri, K & T Ry. Co.* has not been followed, and the decisions have not since varied [however aberrant a given application] from the *Parker-Washington Co.* postulate that to

---

**2.** The accommodation was between decisions which rendered the *payment of money* text of the extant ten-year statute of limitations to mean, variously, *a promise to pay money or a debt* [*Menefee v. Arnold,* 51 Mo. 536 (1873)], to *any contract for the payment of money,* whether on a debt for unliquidated damages [*Knisely v. Leathe,* 256 Mo. 341, 166 S.W. 257 (1914)], or something intermediate [*Curtis v. Sexton,* 201 Mo. 217, 100 S.W. 17 (1907)].

**3.** That is to say, *Missouri, K & T Ry. Co. v. American Surety Co.* held that the provision of indemnity was a promise to pay although, under the facts and terms of obligation, the railroad indemnitee needed resort to extrinsic evidence to prove that both the obligation to make indemnity had accrued as well as to show the amount of that obligation.

constitute *a promise for the payment of money*, "the money sued for" must be that money promised by the language of the writing without resort to extrinsic proofs, Id. at 1042[1], nor from the cognate that the cause of action be based upon an absolute and fixed liability—a written acknowledgment of money due and unpaid. *Silton v. Kansas City*, 446 S.W.2d 129 (Mo.1969); *Sam Kraus Company v. State Highway Commission*, 416 S.W.2d 639, 641[1] (Mo. 1967); *Martin v. Potashnick*, 358 Mo. 833, 217 S.W.2d 379 (1949); *Lato v. Concord Homes, Inc.*, 659 S.W.2d 593 (Mo.App. 1983); *Lively v. Tabor*, 341 Mo. 352, 107 S.W.2d 62 (1937); *Atkins v. Clark*, 644 S.W.2d 365 (Mo.App.1982); *Barberi v. University City*, 518 S.W.2d 457 (Mo.App. 1975); *McIntyre v. Kansas City*, 237 Mo. App. 1178, 171 S.W.2d 805 (1943); *Bangert v. Boise Cascade Corp.*, 527 F.2d 902 (8th Cir.1976).

■ The Liquidator insists nevertheless that under governing authority, the LMIA promise of indemnity to Associated Surety under the subagency agreement constitutes a promise for the payment of money, so that extrinsic evidence may be received "to determine 'the exact amount to be paid or other detail(s)' " of the promise, and so comes within the operation of the ten-year statute of limitations.

We reject that contention for two reasons, either of which, on established authority, removes the suit from the operation of the ten-year statute: (1) the cause of action the Liquidator asserts is on an obligation which is contingent, therefore the language of the writing does not promise the payment of money, and the money sued for is not promised by that writing, and (2) the theory of indemnity the Liquidator pleads and asserts can be proven only by resort to evidence *aliunde*.

The suit of the Liquidator rests on the LMIA promise to indemnify Associated Surety from liability, loss cost, damage, claim suits and other expenditures of "any kind and nature which it may sustain or incur as a result of, or in connection with, the execution of any bonds written by [LMIA]." It is evident, therefore, that the cause of action the petition pleads [and the Liquidator evidence tends to prove] does not rest on a writing which promises the payment of money—an indebtedness or liability absolute or fixed—and that the recompense the cause of action seeks are for damages for a breach of contract, and not the enforcement of a promise for the payment of money.

It is equally evident that the theory of indemnity the Liquidator pursues can be proven only by evidence *aliunde*, and hence is not an action upon a writing for the payment of money within § 516.110. The petition the Liquidator brings [as Associated Surety assignee] is to recover the $36,832.27 and incidental amounts *paid by Summit* to Tindel under the bond issued by LMIA to Smith County through Associated Surety. The indemnity LMIA promises, however, is to *Associated Surety* from liability or loss from any bond written by LMIA. While the right of the Liquidator to indemnity [as assignee of Associated Surety] is not apparent *from the petition*—since the petition alleges no loss to Associated Surety from the payment to Tindel under the Smith County bond—*the Liquidator evidence* tends to prove a basis of indemnity from LMIA to Associated Surety under the subagency agreement: a right of indemnity from LMIA derived from the obligation of Associated Surety to Summit under the retrospective-profit commission term of the general agency agreement between them to remit such sum as may be necessary to make up any deficit between commissions earned and losses under the bonds. The *evidence* was that the Tindel bond loss was a component of the $1,073,180.70 imbalance adjudged by the Indiana court in favor of Summit and against Associated Surety under the retrospective-profit commission term between them. The Liquidator contends from this *evidence* that the subagency agreement op-

erates to indemnify Associated Surety to the extent of the loss paid by Summit to Tindel and the expenses incidental to that litigation.[4] Whatever payment was due Associated Surety [and assignee Liquidator] as indemnitee of LMIA, therefore, was on a theory of indemnity the Liquidator could not prove without resort to extrinsic evidence and writings: the obligation of LMIA to redress the imbalance of debits over credits owned by Associated Surety to Summit under a separate writing, to the extent that any bond executed by LMIA contributed to that imbalance.[5] That is to say, resort to extrinsic facts was essential to establish both the existence of the obligation to pay under the indemnity agreement, as well as the amount of the loss, and hence—under all the authorities—the LMIA indemnity was not a promise for the payment of money, and the cause of action was governed by the five-year limitation of § 516.120.

The Liquidator contends that, in any event, the cause of action in suit was commenced within five years of accrual, therefore the trial court adjudication that the action was barred by the limitations of § 516.120 was error.

■ The action the Liquidator pleads is on a covenant for indemnity. Indemnity contracts are of two kinds: indemnity against loss and indemnity against liability. In either case, the right of action accrues when the covenant is breached. *Missouri Pacific Railroad Co. v. Rental Storage & Transit Co.*, 524 S.W.2d 898, 907[8–11] (Mo.App.1975). In the case of an indemnity against loss, the covenant is breached and the cause of action accrues when the indemnitee sustains an actual loss. In the case of an indemnity against liability, the covenant is breached, and the indemnitee becomes entitled to sue, as soon as the indemnitee incurs liability, and actual loss need not be shown to recover. *Moberly v. Leonard*, 339 Mo. 791, 99 S.W.2d 58, 63[4–6] (1936); *Steckdaub v. Wilhite*, 211 S.W. 915, 916[3, 4] (Mo.App.1919); 42 C.J.S., Indemnity § 14 (1944). There are also indemnity contracts which intermix the two covenants. 41 Am.Jur.2d *indemnity* § 29 (1968); *Globe Indemnity Co. v. Larkin*, 62 Cal.App.2d 891, 145 P.2d 633, 634[1] (1944); *Levin v. Friedman*, 271 Md. 438, 317 A.2d 831, 834[4] (1974). The indemnity LMIA covenants to Associated Surety—against *all liability and loss cost*—is of that ilk.

■ To recapitulate, the theory of indemnity Associated Surety [through the Liquidator] asserts against LMIA is that the $36,832.27 paid by Summit to Tindel on the bond issued by LMIA through Associated Surety is subject to redress by LMIA under the promise to the extent that the Tindel loss was a component of the $1,073,180.70 imbalance adjudged by the Indiana court in favor of Summit and against Associated Surety under the retrospective-profit

---

4. We do not suggest whether the LMIA indemnity promise to Associated Surety under the subagency agreement contemplates the obligation to redress any imbalance between Associated Surety and Summit under that retrospective term, nor, if so, whether that obligation accrues nevertheless in circumstances—such as these—where, as between Associated Surety and LMIA, a balance favorable to LMIA remained even after the Tindel bond loss was deducted from the LMIA earned commissions. We will not assume, however, that the LMIA indemnity to Associated Surety for liability or loss incurred "in connection with the execution of any bonds written by [LMIA]" was intended on such a formula. The trial court did not reach the merits of the contentions between the Liquidator and LMIA, and neither do we.

5. It is clear from the record that LMIA was not a party to the retrospective-profit commission agreement between Associated Surety and Summit, that no LMIA officer ever saw the contract, or was informed of any of the content; nor was LMIA a party to the Indiana litigation to enforce that retrospective profit-commission device, nor was informed of its pendency, nor of the judgment until after its rendition. Thus, whatever the true effect of that provision between the general agent and Summit *inter sese*, it was not a term of contract between the general agent and the subagent.

commission term of the general agency agreement between them. The Liquidator argues that the covenant in the subagency agreement between Associated Surety and LMIA was for indemnity against loss [or against *both* loss and indemnity], so that any cause of action on that covenant did not accrue until 1981, when the loss on the Tindel bond was adjudicated as one component of the imbalance against Associated Surety and in favor of Summit by the Indiana court. The trial court adjudicated that any cause of action by Associated Surety for indemnity against LMIA accrued in 1975 when Summit paid Tindel under the LMIA bond, and hence the action on the LMIA indemnity promise commenced in 1982 was untimely and barred by five-year statute § 516.120.[6]

■ We assume for purpose of opinion the theory of indemnity the Liquidator cause of action asserts: that the indemnity LMIA promised to Associated Surety included the liability or loss by Associated Surety to Summit under the reciprocal-commission term of the agreement between them, to the extent that the loss under a bond written by LMIA and issued by Summit contributes to a deficit owed Associated Surety to Summit. We assume for purpose of opinion, also, that the Liquidator cause of action under the theory asserted [although the covenant was to indemnify against both liability and loss] accrued only upon an actual loss suffered by Associated Surety, and conclude, nevertheless, that the Liquidator suit commenced on September 21, 1982, was untimely.

The General Agency Agreement between Summit and Associated Surety was executed on June 1, 1972. The commission structure of the agreement, as well as the formula for calculation of the commission due Associated Surety, and the administration of that formula by Summit, are delineated in paragraph 13 of the General Agency Agreement. A signatory of that agreement was Carolyn H. Vernon, then corporate secretary of Summit. In 1975, Summit was liquidated, and Vernon joined the Liquidator staff as Director of Ancillary Operations. In that capacity, Vernon has since been "to collect salvage" on the surety claims allowed and paid by Summit. Vernon was presented as a witness by the Liquidator in the trial of the case we review. Her testimony explained the commission formula and the administration of that formula by Summit. The gross compensation to Associated Surety under the agreement included a retained commission as well as a provisional commission. The provisional commission was subject to adjustment according to the profit-commission formula of Annex B to ¶ 13b. That formula, generally, offset losses under bonds written by Associated Surety and issued by Summit, against the provisional commissions earned by Associated Surety. Any balance was paid over to Associated Surety, and any deficit—at the option of Summit—was paid over to Summit by Associated Surety.

The General Agency Agreement provided specifically [¶ 13b] that within one hundred and eighty days after the close of the accounting period [as of December 31, 1972]

---

6. There is authority, which we deem well reasoned, that in the case where the covenant promises indemnity against both liability and loss, the right of action accrues to the indemnitee immediately upon the failure of the indemnitor to perform, whether or not the indemnitee has incurred actual damage or loss. 41 Am. Jur.2d *Indemnity* § 29 (1968); 42 C.J.S. *Indemnity* § 14d (1944); *Levin v. Friedman,* 271 Md. 438, 317 A.2d 831, 834[4] (1974). The rule rests on the policy against the enforcement of a unitary claim piecemeal and the split cause of action. *Globe Indemnity Co. v. Larkin,* 62 Cal.

App.2d 891, 145 P.2d 633 (1944), cited by the Liquidator, can be understood to disagree. Whether the LMIA promise of indemnity to Associated Surety be against liability, loss, or a glomeration of both, is of no consequence here, since, as our discussion presently shows, *both* the liability of Associated Surety to Summit *and actual loss* to Associated Surety accrued to Associated Surety by the Summit payment of the Tindel claim in 1975, more than five years before 1982, when the Liquidator [as assignee of Associated Surety] brought suit for the LMIA breach of the covenant of indemnity.

a retrospective profit-commission "shall be computed according to the formula expressed" in the contract, "and *that adjustment shall be made each three months thereafter*" [emphasis added]. It was the practice in the administration of that formula, Vernon explained, that in the case of a deficit, Summit adopted the option—rather than to require immediate payment of the deficit amount from the general agent—to "loan back" up to the amount of the provisional commission. Thus, under that formula and practice, any loss from the execution of a bond issued through the general agent Associated Surety was actually incurred no later than at the adjustment of accounts between Summit and Associated Surety and would appear as a component of the imbalance between them for that quarter. The loss, according to witness Vernon, took the form of a "loan back" against "up front" or provisional commissions—and was an amount for which Associated Surety was charged by that device. In such event, the loss to Associated Surety was incurred and actual, and any cause of action for indemnity against that loss accrued then. Restatement of Restitution § 77 (1937); *Moberly v. Leonard,* 339 Mo. 791, 99 S.W.2d 58, 63[3, 4] (1936); *Steckdaub v. Wilhite,* 211 S.W. 915, 916[3, 4] (Mo.App.1919).

The claim by Tindel against the bond was paid by Summit on January 14, 1975. In the usual course and practice, whatever imbalance and deficit the payment to Tindel incurred to Associated Surety in the retrospective profit-commission account with Summit, then, was known to Associated Surety by the close of the quarterly adjustment period defined by ¶ 13b of the General Agency Agreement—that is, by the end of March of 1975. It was by then also, in the usual course and practice between Summit and Associated Surety, that any deficit owed by Associated Surety from the imbalance of accounts was charged by Summit against the Associated Surety provisional commissions.[7] It was then that the loss accrued to Associated Surety, and it was then any right of indemnity against LMIA arose. The suit to enforce that promise of indemnity was commenced on September 21, 1982, more than five years after the accrual of the right of action, and is barred by § 516.120.

The judgment is affirmed.

All concur.

---

**7.** The exhibits in evidence include the pleading of the Rehabilitator [presumably precursor to the Liquidator] as intervenor in the Indiana suit between Associated Surety and the American National Bank to enjoin payment of the letters of credit deposited with Summit. The pleading of the Rehabilitator appends exhibits, among them calculations under the retrospective profit-commission provision of the General Agency Agreement between Summit and Associated Surety. They disclose an *indebtedness* by Associated Surety to Summit under that formula *of $842,574 as of March 31, 1975.* The Rehabilitator asserts in the pleading that "payment of said sum has been guaranteed" by Frank E. Wright, President of Associated Surety—parties to the action. The record before us allows the inference only that by the end of March of 1975, Associated Surety knew that there was an imbalance in favor of Summit, that the payment to Tindel was a component of that imbalance, and that Summit held that imbalance as a debt against any credits to Associated Surety. The fact that the Tindel payment was a loss to Associated Surety was known by that date.