**750**

Cleo R. VAN STRATTEN, Plaintiff,

v.

James L. FRIESEN, Defendant,

and

Donald Meyer, Defendant–Respondent,

and

Funeral Security Plans, Inc.,
Defendant–Appellant.

No. 17627.

Missouri Court of Appeals,
Southern District,
Division Two.

Oct. 16, 1992.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Nov. 9, 1992.

Application to Transfer Denied
Dec. 18, 1992.

James W. Riner, Hendricks, Riner &
Smith, Jefferson City, for defendant-respondent.

Michael J. Gallagher, Wassberg & Gallagher, Kansas City, for defendant-appellant.

PREWITT, Judge.

In accordance with a jury verdict, judgment was entered in favor of appellant and against respondent for $1,618.92 on appellant's "cross-claim", and in favor of respondent and against appellant for $75,000 on respondent's "cross-claim". Appellant appeals, contending that the trial court erred in entering judgment including said $75,000. Appellant's contentions include an assertion that respondent's claim is barred by the statute of limitations, § 516.120(1), RSMo 1986. It states:

"516.120. **What actions within five years.**—Within five years:

(1) All actions upon contracts, obligations or liabilities, express or implied, except those mentioned in section 516.110, and except upon judgments or decrees of a court of record, and except where a different time is herein limited;"

Respondent counters that the applicable statute of limitations is § 516.110(1), RSMo 1986. It states:

"516.110. **What action shall be commenced within ten years.**—Within ten years:

(1) An action upon any writing, whether sealed or unsealed, for the payment of money or property;"

Respondent operated an unincorporated business known as Williams–Meyer Funeral Home which performed funeral services and sold related items. Previous to respondent purchasing the business, the prior owners had entered into an agreement with appellant. Appellant sells "prearranged funeral services". It entered into an agreement with the previous owners of the funeral business for them to perform funerals and provide related items at a fixed price for persons who contracted with appellant.

The record reflects that there were three agreements with respondent's predecessor

owners, dated October 23, 1962, November 1, 1973, and March 14, 1977. When he purchased the business respondent agreed to perform the funerals previously contracted and was assigned the benefits of those contracts. The agreement dated March 14, 1977 stated:

b. For every service conducted in the Funeral Home's service area or its environs, the face amount of the contract *One Thousand One Hundred Ninety Five $1195.00.* In addition, it is understood that when the portion of the Permanent Trust Fund allocated to a Trust Agreement shall equal the above face amount after payment of taxes by the Trust Officer and a 25% sales charge, the earnings of such portion of the Permanent Trust Fund will be divided equally between the Funeral Home and Funeral Security annually.

The agreement dated November 1, 1973 contained the same provision except that the amount was $844. The agreement of October 23, 1962 stated the amount of $695 and varied slightly from the quoted provision, but neither of the parties contend that these deviations are substantial or relate to the issues here.

Respondent contended that he met with representatives of appellant in the spring of 1978. He said he was told then that no funds would be distributed to him from trust fund referred to in the above contracts. Respondent asserts that this statement constituted an "anticipatory breach", see *Wooten v. DeMean,* 788 S.W.2d 522, 526 (Mo.App.1990), which justified him in refusing to perform funeral services for the amount stated in the three agreements. The failure to perform a funeral for the agreed price was the basis for appellant's claim of $1,618.92 against respondent.

Appellant asserts in its brief that as respondent's claim for relief first occurred on September 13, 1984, more than six years after respondent contends there was a breach and refused to perform any funerals for the agreed price, his claim is barred by the five-year statute of limitations. Respondent does not argue with the analysis of when his cause of action accrued nor the date he first made the claim.[1]

Respondent's brief says the "trial court properly denied FSP's [appellant's] motion for directed verdict and after trial motions based upon the contention that Meyer's claims were barred by the five year statute of limitations because the contract in question called for the payment of money and is governed by the ten year statute of limitations." No other theory was argued by respondent at trial or in his brief. Therefore, this is the only issue related to the statute of limitations which this court considers. See *Burden v. Burden,* 811 S.W.2d 818, 820 (Mo.App.1991); *BCCLW/Casey, Inc. v. S.O. Gillioz Partners, Inc.,* 783 S.W.2d 174, 175 (Mo.App.1990).

A thorough discussion of the cases relative to the applicability of the ten-year or five-year statute of limitations was conducted by the Western District of this court in *Superintendent of Ins. v. Livestock Market,* 709 S.W.2d 897, 900–903 (Mo.App.1986). Although in our view some of the cases interpreting those statutes may deviate from the express language of the statute itself, as the leading decisions are that of the Missouri Supreme Court, those decisions are controlling upon this court. Mo. Const. art. V, § 2.

The holding of Missouri appellate courts regarding those statutes is summarized in *Superintendent* at 900:

---

**1.** There is no contention that respondent's claim relates back to the petition or to an earlier filed claim. See *Farmers State Bank v. Place–Wiederholt,* 747 S.W.2d 170, 173 (Mo.App.1988); *Northwest Radiation Oncology v. Goodstal,* 735 S.W.2d 762 (Mo.App.1987). See also *Victor v. Home Savings of America,* 645 F.Supp. 1486, 1498 (E.D.Mo.1986). Therefore, such a question is not presented or discussed here.

The specific date when the statute of limitations started to run due to the claimed anticipatory breach or other breach is not clear from the record nor addressed by the parties. See *Kansas City v. Kansas City Transit,* 406 S.W.2d 18, 25 (Mo.1966), cert. denied, 385 U.S. 1036, 87 S.Ct. 776, 17 L.Ed.2d 682 (Mo.1967), reh. denied, 386 U.S. 969, 87 S.Ct. 1019, 18 L.Ed.2d 126; *Southern Cross Lumber v. Becker,* 761 S.W.2d 269, 271 (Mo.App.1988); *Title Insurance Co. of Minn. v. Constr. Escrow,* 675 S.W.2d 881, 885 (Mo.App.1984); 54 C.J.S. Limitations of Actions § 134, pp. 178–179 (1987).

It is the evolved principle of our decisions that, in order for the ten-year limitations period of § 516.110 to appertain, the writing must be not only for the payment of money, but also must contain a *"promise to pay money...."* [emphasis added] *Martin v. Potashnick*, 358 Mo. 833, 217 S.W.2d 379 at 381 (1949). Once that obligation is found from the writing, the exact amount to be paid or other detail of the obligation may be shown by extrinsic evidence—*but not the promise itself.* Id. "[T]he essence of a promise to pay money is that it is an acknowledgement of an indebtedness, *an admission of a debt due and unpaid."* Id. [emphasis added] That rationale yields the concomitant: *"[t]he promise may not be shown by extrinsic evidence or consist of an obligation imposed by law from the facts of the transaction."* *Id.* [emphasis added] Thus, although in *Potashnick*, there was a writing—an open account—that some indebtedness existed, that the debt was due and payable was determinable only by extrinsic evidence, and hence the contract was not a promise to pay money within § 516.110. This rule and cognate maxims have been given repeated and emphatic effect by our decisions.

A case similar to the question presented here is *McIntyre v. Kansas City*, 237 Mo. App. 1178, 171 S.W.2d 805 (1943). There, Kansas City contracted with an architect to plan and supervise the construction of a viaduct never completed. The architect sued the city claiming he was entitled to payment. The court determined that there was no unqualified promise to pay money as the payment was conditional. *McIntyre* 171 S.W.2d at 811. The court held that the five-year statute of limitations applied.

Here, there was no unconditional promise to pay money, but the payment was conditioned upon several contingencies. Prearranged funeral contracts must be sold, the purchasers must pay the balance due under the contract, the monies are to be deposited in a trust account, there must be sufficient earnings from the trust account to cover the 25% sales charge, all earnings advanced to the funeral home must have been repaid and all taxes paid.

The language of the agreements does not contain a promise to pay money which is an acknowledgment of a then present indebtedness. There is no indebtedness until the conditions outlined above are met. Thus, the five-year statute, § 516.120, applies, barring respondent's claim. Among the cases relied upon by respondent is *Mark Twain Bank, N.A. v. Platzelman*, 740 S.W.2d 388 (Mo.App.1987), holding that a guarantee is a promise for the payment of money governed by the ten-year statute of limitations. That case does not aid respondent. There, the guarantee unconditionally guaranteed payment of certain debts, much different than the present situation.

The judgment is reversed and the cause remanded with instructions that the court amend its judgment previously entered to provide that respondent not recover from appellant.

FLANIGAN, C.J., and MONTGOMERY, P.J., concur.