**BURLINGTON NORTHERN RAILROAD COMPANY, Respondent,**

v.

**CHICAGO & NORTHWESTERN TRANSPORTATION COMPANY, Appellant.**

**No. WD 46413.**

Missouri Court of Appeals,
Western District.

March 16, 1993.

Motion for Rehearing and/or Transfer to Supreme Court Denied April 27, 1993.

David M. Harding, Kansas City, for appellant.

Edward W. Mullen, Kansas City, for respondent.

Before LOWENSTEIN, C.J., and TURNAGE and HANNA, JJ.

HANNA, Judge.

Defendant, Chicago & Northwestern Transportation Co. ("C & NW"), appeals the trial court's granting of summary judgment in favor of plaintiff, Burlington Northern Railroad ("Burlington"). On December 1, 1984, Burlington and C & NW entered into a "Temporary Agreement Covering Advance Right of Entry and Occupancy of Burlington Northern, Inc. Property" ("Temporary Agreement").[1] This temporary agreement granted permission to C & NW to use Track No. 3 for the purpose of receiving interchange traffic from Burlington.

As consideration for C & NW's use of the .79–mile long track, the Temporary Agreement set forth the following:

> [C & NW] hereby agrees to indemnify and hold harmless [Burlington] from and against and defend [Burlington] from and against any and all claims, loss, costs, suits or damages arising out of injuries to or death of any and all persons ... including ... the parties hereto, their agents and employees ... in any manner connected with or resulting from, either directly or indirectly, the occupancy and use of [Burlington's] said property by [C & NW] ... regardless of whether or not such injury ... may have been caused or contributed to by the

negligence of [Burlington], its agents or employees.

The Temporary Agreement specified that it shall "remain in full force and effect until such time as a formal lease, permit or license is entered into by and between the parties hereto covering occupancy of the property of [Burlington] hereby permitted." The agreement also specified that the execution of such a formal lease, permit or license "shall not operate to absolve [C & NW] of any liability assumed and incurred by it hereunder."

On March 18, 1985, a C & NW train operated by a C & NW employee derailed on Track No. 3 causing damage to the track. Burlington's employees were called to repair the damage. Boyd Pickering, a Burlington employee, received serious injuries while repairing the leased track. On the day of the accident, Mr. Pickering signed an "Application for Sickness Benefits" to the U.S. Railroad Retirement Board and a "Notice of Disability" to Benefit Trust Life Insurance Company, both indicating that he expected to make a claim against Burlington for his injuries.

On March 21, 1985, Burlington's claim agent wrote a letter to C & NW's District Claim Agent in which he advised C & NW of Mr. Pickering's injury, attached a copy of the Temporary Agreement, and called attention to the indemnification clause. Burlington's claim agent then asked C & NW's claim agent whether C & NW wished to handle Mr. Pickering's claim and protect Burlington, or whether C & NW preferred that Burlington "handle for settlement and then bill you?" C & NW acknowledged the notice of the claim in its response of April 12, 1985, advising that it desired Burlington's claim agent to "continue to handle this claim with your employee," but asked for copies of all statements, accident reports and medical reports, and that Burlington confer with the C & NW claim agent before negotiating any settlement.

1. Burlington Northern Railroad Company was formerly named "Burlington Northern, Inc." and as successor by merger to the former Chicago, Burlington & Quincy Railroad Co., was in 1984 and is now the owner of certain railroad tracks at the 12th Street Yard in Kansas City, Missouri.

On April 25, 1985, Burlington's claim agent received from Mr. Pickering a written request to fill out the Employer's Report section of a medical bill to be submitted to an insurance company. Burlington responded that the bill had already been received and its payment had been arranged. On May 8, 1985, Burlington's claim agent sent Mr. Pickering a draft in the amount of $700.00 as an advancement, together with an "Agreement for Advancement of Funds," to be credited against any settlement payment. Mr. Pickering signed the advance payment agreement on May 20, 1985, and returned it to the claim agent.

On May 20, 1985, Burlington and C & NW entered into a more formal agreement concerning the Burlington property. This agreement also had language of indemnification but distributed the risks of indemnification between the parties. However, it did not contain express language modifying the Temporary Agreement as to any liability already accrued. The agreement did provide that it "shall be effective December 1, 1984 (the date of the Temporary Agreement) and remain in force until terminated by mutual agreement."

On September 9, 1987, Mr. Pickering filed suit under the Federal Employer's Liability Act against Burlington seeking $2 million in damages. Both before and after the lawsuit, Burlington demanded and gave C & NW the opportunity to defend that lawsuit, which C & NW refused to do. Eventually, Burlington settled the case for $235,000.00, which it paid to Mr. Pickering on December 8, 1988. Burlington incurred defense costs in the total sum of $2,619.68. C & NW refused to indemnify under the Temporary Agreement and Burlington brought this action on April 13, 1989.

Motions for Summary Judgment were filed by both parties and on May 20, 1992, the trial court entered summary judgment in favor of Burlington and against C & NW. The trial court found that the Temporary Agreement was to indemnify Burlington against both liability and loss, that C & NW's liability accrued approximately two months before the execution of the Formal Agreement, that Burlington's settlement with Mr. Pickering was made in good faith and was a reasonable compromise, and that Burlington was entitled to recover its legal fees and costs of defense in the sum of $2,619.68. The trial court rendered judgment in favor of Burlington in the total sum of $237,512.58 plus prejudgment interest at 9% from April 13, 1989, the date the petition was filed, and likewise entered judgment against C & NW on its counterclaim. C & NW appeals.

On appeal, C & NW contends that the trial court erred by holding that (1) the Temporary Agreement was a contract for indemnity against loss and liability, (2) the Temporary Agreement's indemnity provision was controlling regarding Mr. Pickering's injury claim, and (3) C & NW's obligation to indemnify had accrued prior to the execution of the Formal Agreement. These holdings frame the issues in the present case.

■ We first determine whether the Temporary Agreement was a contract for both loss and liability. The trial court found that the contract was one of indemnity for both liability and loss, rather than loss only, because C & NW agreed to "defend [Burlington] from and against any and all claims, loss, costs, suits or damages arising out of injuries...." The court found the terms "defend Railroad [Burlington]" and "all claims" to be the operative language in making this an indemnity agreement of liability as well as loss.

In *Moberly v. Leonard*, 339 Mo. 791, 99 S.W.2d 58, 63 (1936), the Supreme Court acknowledged the term "claim" was synonymous with "legal liability" in describing the differences between the indemnity against loss and indemnity against liability. The court stated:

> Where the contract is not a mere contract to indemnify and save harmless, but a contract to save from a legal liability or claim, the legal liability incurred and not the actual damage sustained is the measure of damage.

*Id.* 99 S.W.2d at 63.

In *Bond Diamond Co. v. Wilson*, 325 S.W.2d 63, 65 (Mo.App.1959), this court considered similar language in an indemni-

ty agreement. The court found that where the indemnitor agreed to indemnify against "any debts, *claims* or demands," the agreement was a contract for indemnity against liability. *Id.* at 66 (emphasis added).

Here, the Temporary Agreement is clear. The mention of such terms as "claims" and "suits," indicate that the contract covered indemnity against liability. Also, C & NW expressly agreed to "defend" Burlington against claims and suits for personal injuries. By binding C & NW to do a certain act, defend, or pay sums, the Temporary Agreement is a contract of indemnity against liability. 42 C.J.S. *Indemnity* § 3 (1991).

■ As a general rule of contract construction, "an informal or preliminary memorandum of the parties is merged into a subsequent formal contract and when parties reduce prior agreements into an integrated, unambiguous contract, all prior contracts are merged therein and become inoperative if they concern the same subject matter." *Dill v. Poindexter Tile Co.*, 451 S.W.2d 365, 370 (Mo.App.1970). Therefore, the issue is whether the Temporary and Formal Agreements concern the exact same subject matter.

The Temporary Agreement of December 1, 1984, and the Formal Agreement of May 20, 1985, both deal with the same track, the same use of that track, and have the same effective date. C & NW claims that these facts are sufficient to find that the two agreements concern the same subject matter and therefore invoke the merger principle set forth in *Dill* dictating that the Formal Agreement controls. However, Burlington argues that the two contracts diverge at a critical point, which is the focus of this suit. The Temporary Agreement required C & NW to indemnify Burlington against loss regardless of whether that loss was a result of the actions of C & NW or a Burlington employee if the loss was a result of C & NW's use of the track. The Formal Agreement distributed the risks of indemnification between the parties.

Defendant contends that the "general principle" set forth in *Dill* implies that the indemnification provision of the Formal Agreement is controlling in the present case. However, the Formal Agreement says nothing about liabilities already incurred under the earlier agreement, and contains no express provision that is intended to discharge any liability to indemnify Burlington, which had already become fixed under the Temporary Agreement. More importantly, the Formal Agreement says nothing to contradict the language of the Temporary Agreement which states that a second agreement "shall not operate to absolve [C & NW] of any liability assumed and incurred by it hereunder."

This language is important in light of the Supreme Court decision in *Berry v. Crouse*, 376 S.W.2d 107 (Mo.1964). While the court repeated the general principle that the latter of two inconsistent documents will supersede the earlier to the extent of any inconsistency, the court also stated:

> It is now perfectly clear that informal contracts, whether written or oral, can be modified and discharged by a subsequent agreement, whether written or oral. The subsequent agreement, even though it is in writing, does not discharge the previous oral (or written) agreement *if it is not agreed that it shall* and it is not inconsistent therewith.

*Id.* at 112 (emphasis added).

Again, the Formal Agreement makes no mention of any such agreement to discharge C & NW of any liability that may have already accrued. Clearly C & NW was aware of Mr. Pickering's injury and claim against Burlington. In fact, C & NW's claim agent specifically advised Burlington's claim agent to "continue to handle this claim," asked for copies of all statements and reports, and even asked to be advised before a potential settlement negotiation. If C & NW's intention was to "absolve" [2] itself of liability arising under the Temporary Agreement, then it could have easily addressed such concerns in the drafting of the Formal Agreement.

---

**2.** As mentioned earlier, the terms of the Temporary Agreement provided that the execution of a subsequent agreement "shall not operate to *ab-*

*solve* [C & NW] of any liability assumed and incurred by it hereunder." (emphasis added)

In explaining the effect of the merger principle, the *Dill* court stated the general rule requires that "the two contracts must be interpreted together and insofar as they are inconsistent, the second contract prevails and the balance of the first agreement, insofar as it is consistent with the second *in purpose and substance, may be enforced.*" *Dill*, 451 S.W.2d at 370 (emphasis added). The Temporary Agreement and the Formal Agreement are not inconsistent, insomuch as, they control the liability of the parties at different times during the parties' contractual relationship. A correct interpretation of the two contracts allow for the Temporary Agreement's indemnity provision to control where liability has accrued before the execution of the Formal Agreement.

Support for this interpretation can be found in *Luckey v. St. Louis & S.F.R. Co.*, 133 Mo.App. 589, 113 S.W. 703 (1908). The *Luckey* court held:

> [T]he rule is well settled that "if damages have accrued under a verbal contract, and there is no waiver or disclaimer of such breach in the subsequent writing, an action may be maintained on the verbal agreement, notwithstanding there was a subsequent writing."

*Id.* 113 S.W. at 703 (quoting *Hoover v. St. Louis & S.F.R. Co.*, 113 Mo.App. 688, 88 S.W. 769, 770 (1905)).

The Formal Agreement contains no such waiver or disclaimer of C & NW's liability to indemnify Mr. Pickering's claim. In fact, this court in *Baker v. St. Paul Fire & Marine Ins. Co.*, 427 S.W.2d 281, 291 (Mo. App.1968), cited to *Luckey* and held:

> It is a fundamental principle of substantive law that rights already vested under an oral agreement are not extinguished or diminished, even if the oral agreement is merged into a written contract subsequent to the accrual of such rights.

Therefore, the indemnity provision of the Temporary Agreement does control, if C & NW's liability had become fixed before the execution of the Formal Agreement on May 20, 1985. The pivotal issue then becomes when liability under the Temporary Agreement accrued.

■ C & NW contends that a claim for indemnity accrues at the time payment is made under compulsion by the indemnitee. *See American Bank of Richmond v. Missouri Farmer's Ass'n*, 695 S.W.2d 150, 152 (Mo.App.1985). However, *American Bank*, concerned an indemnification that arose by reason of a legal obligation or duty imposed on the indemnitor rather than by virtue of a contract between the parties. As such, it was an indemnification against loss. The Temporary Agreement in question was a contract for indemnity against loss *and liability.* As the Supreme Court noted in *Moberly:*

> A promise to indemnify against the existence of a liability is broken as soon as the liability is incurred ... it is not necessary to show actual loss in order to recover ...

*Moberly*, 99 S.W.2d at 63.

> Likewise, in *Bond Diamond Co.*, this court stated: Where the indemnity is against liability, the cause of action is complete and the indemnitee may recover on the contract as soon as his liability has become fixed and established, even though he has sustained no actual loss or damage at the time he seeks to recover.

*Bond Diamond Co.*, 325 S.W.2d at 66.

When a contract to indemnify against liability places an additional obligation of performing some act in regard to the subject matter, such as defend against suits, liability becomes fixed immediately upon indemnitor's neglect to perform the act. *Homan v. Employers Reinsurance Corp.*, 345 Mo. 650, 136 S.W.2d 289, 296 (Mo.App.1939).

The Temporary Agreement, being one to indemnify against liability and loss, became operative as soon as the injury occurred. Therefore, C & NW's liability to indemnify the plaintiff became fixed at the time of the accident or the date Mr. Pickering was injured. Liability became fixed or vested, before the execution of the formal agreement, and the right was not extinguished by the execution of the second agreement.

■ C & NW also argues that indemnity must be grounded on some fault of the indemnitor. This contention is not supported by the unambiguous language of

the Temporary Agreement. The only limitation which the parties placed on the obligation to indemnify was that the personal injury be in "any manner connected with or resulting from, either directly or indirectly, the *occupancy and use of* [Burlington's] said property by [C & NW]." In its answer, C & NW admitted the Mr. Pickering was injured "while in plaintiff's employ, in the course of plaintiff's undertaking to repair plaintiff's Kansas City Track No. 3, which repair was occasioned by derailment of a train operated by defendant's employees." Thus, C & NW admitted the condition precedent to its obligation to indemnify Burlington.

The trial court was correct in finding the Temporary Agreement's indemnity provision controlling in the present case. The terms of the agreement are clear as to C & NW's obligation to indemnify Burlington, the agreement was a contract for indemnity against loss and liability, and the incident giving rise to C & NW's obligation accrued before the execution of Formal Agreement.

The judgment is affirmed.

All concur.